# United States Court of Appeals
## For the First Circuit

No. 04-2140

UNITED STATES OF AMERICA,

Appellee,

v.

RONALD MYLES HATCH, II,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Circuit Judge,
Siler,* Senior Circuit Judge,
and Howard, Circuit Judge.

Judith H. Mizner, Federal Defender Office, with whom Miriam
Conrad, Federal Defender Office, was on brief, for appellant.
Sandra S. Bower, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for the
United States.

January 6, 2006

---

*Of the Sixth Circuit Court of Appeals, sitting by designation.

**SILER, <u>Senior Circuit Judge</u>**. Defendant Ronald Myles Hatch, II appeals the district court's denial of his motion for judgment of acquittal for his convictions of five counts of making a false statement to the Federal Aviation Administration ("FAA"), in violation of 18 U.S.C. § 1001. We affirm.

## I. BACKGROUND

Hatch was hired as an air traffic controller at Logan International Airport ("Logan") in 1982. When he started work, the FAA required that he be medically certified for his position. As part of the certification process, Hatch completed form 8500-8, titled "Medical Certificate _____ Class and Student Pilot Certificate," (the "8500-8") each year starting in 1982. Question 21 asked the following: "MEDICAL HISTORY – HAVE YOU EVER HAD OR HAVE YOU NOW ANY OF THE FOLLOWING: (For each 'yes' checked, describe conditions in REMARKS)." The conditions included various illnesses, "Record of traffic convictions," and "Record of other convictions." Hatch checked "yes" to the "Record of traffic convictions" query and included in the "REMARKS" box that he had a 1978 conviction in Massachusetts for operating a motor vehicle under the influence of alcohol ("OUI"). This "REMARKS" box also stated "(If no changes since last report, so state)."

The 8500-8 changed in 1991 (the "new 8500-8"). This form similarly contained a "MEDICAL HISTORY" box, Question 18, which asked the following:

> Have you _ever_ had or have you now any of the following? Answer "yes" for every condition you have ever had in your life. In the EXPLANATION box below, you may note "PREVIOUSLY REPORTED, NO CHANGE" only if the explanation of the condition was reported on a prior application for an airman medical certificate and there has been no change in your condition. **See Instructions Page**.

The new 8500-8 again listed various illnesses but directed the applicant to a separate box for convictions. This portion was labeled "Conviction and/or Administrative Action History" and provided as follows:

> History of (1) any conviction(s) involving driving while intoxicated by, while impaired by, or while under the influence of alcohol or a drug; or (2) history of any conviction(s) or administrative action(s) involving an offense(s) which resulted in the denial, suspension, cancellation, or revocation of driving privileges or which resulted in attendance at an educational or a rehabilitation program.

Hatch answered "yes" to this question and noted in this box that "ITEMS E, U AND V [WERE] PREVIOUSLY REPORTED - NO CHANGE." Item "V" was the OUI question from the original, 1982 8500-8; however, it was now specifically addressed in the "Conviction and/or Administrative Action History" section on the new 8500-8. Item "V" was still included within the "MEDICAL HISTORY" portion of the new 8500-8. If Hatch had any concerns, the new 8500-8 advised him of "Explanations: See Instructions Page." The instructions page clarified that if Hatch answered "yes" to Item "V," he had to provide a description of his conviction in the "Explanations" box. This description must include the specific offense for which he was convicted, the type of administrative action involved, the

-3-

jurisdiction where the conviction occurred, and the date of the conviction.

Although Hatch reported his 1978 OUI conviction, he never reported his subsequent 1983 and 1995 OUI convictions and omitted them from the first 8500-8s following his respective convictions for those years and all thereafter. Hatch checked "yes" to Question 18, Item "U," which directed him to the "Conviction and/or Administrative Action History" section. In the "Explanations" box, he reiterated his 1978 OUI conviction by including it as Item "V," "NO CHANGE." He completed five forms from 1999 through 2003 (the basis for the indictment) that omitted his other two OUI convictions, even though each 8500-8 bore his signature, explained that the information must be complete and true, and warned against making any willfully false statements. In 2003, Dr. Paul Clark, the regional flight surgeon for the FAA in New England, learned that Hatch had failed to report his most recent OUI convictions. As a consequence, Dr. Clark medically restricted Hatch from work.

Hatch was indicted on five counts of knowingly and willfully making and using a false document containing a false statement by answering "no change" to questions regarding OUI convictions on the 8500-8s that he submitted to the FAA, in violation of 18 U.S.C. § 1001. When arrested, he admitted that he had not included two OUI convictions on subsequent 8500-8s in order to "avoid difficulties"

-4-

and "protect his livelihood" because of the certain, severe ramifications of these disclosures.

At his trial, at the close of the government's case and again after the defense rested, Hatch moved for a judgment of acquittal on all counts. See Fed. R. Crim. P. 29(a). He argued that the 8500-8 was fundamentally ambiguous and the statement "NO CHANGE" was literally true under at least one reasonable interpretation of the question. The district court denied the motion and instructed the jury that, in order to convict Hatch, it must find that the government proved that he made the statement knowingly and willfully, that he knew it was untrue when he made it, and that his answer was false under any reasonable interpretation of the 8500-8 if the jury decided that the question could be interpreted in several different ways. Thus, it was the jury's duty to consider and resolve any ambiguities in the 8500-8.

Hatch was found guilty on all five counts and was sentenced to two-years' probation and fined $500. His motion for a judgment of acquittal notwithstanding the verdict was denied. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

"We review *de novo* a district court's denial of a motion for judgment of acquittal under Fed. R. Crim. P. 29." United States v. Cruzado-Laureano, 404 F.3d 470, 480 (1st Cir. 2005). "Our task is to decide whether, after assaying all the evidence in the light

most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." Id. (internal quotation marks and citations omitted). All credibility disputes are to be resolved in the verdict's favor, and this "court 'need not believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in a plausible rendition of the record.'" Id. (quoting United States v. Gomez, 255 F.3d 31, 35 (1st Cir. 2001)). These are "daunting hurdles." See id.

"To establish a violation of 18 U.S.C. § 1001, the government must prove that [Hatch] knowingly and willfully made or used a false writing or document, in relation to a matter within the jurisdiction of the United States government, with knowledge of its falsity." United States v. McGauley, 279 F.3d 62, 69 (1st Cir. 2002).

**1. The new 8500-8 was not fundamentally ambiguous.**

Hatch insists that the new 8500-8 is so fundamentally ambiguous that it cannot support his convictions. According to Hatch, since he had not included his 1983 and 1995 OUI convictions on the 8500-8 for the respective years of each conviction, his "PREVIOUSLY REPORTED – NO CHANGE" statement is not false because there was no change from the previous respective year's form.

-6-

Because there had been no convictions since the 1999 8500-8 was completed and Hatch was only indicted for the years 1999 through 2003, he insists that his statements were literally true in that his convictions were not noted on prior 8500-8s.  Further, Hatch suggests that because the "Conviction and/or Administrative Action History" section asked whether he had a "History of [] any convictions(s)" for OUIs, this "could call for a response to the fact of the history rather than the contents of the history.  As to the fact of a history, the response 'no change' would be literally true."  In addition, he submits that the division of the "MEDICAL HISTORY" section into different boxes on the 8500-8, one for "true medical conditions" and one for conviction history, raises an ambiguity as to whether the "MEDICAL HISTORY" directive also applied to his conviction history.

We reject Hatch's arguments because the 8500-8 is not fundamentally ambiguous:  Hatch was required to disclose any and all OUI convictions.  Any OUI convictions fall expressly under the heading "Conviction and/or Administrative Action History," which is sequentially numbered as part of the "MEDICAL HISTORY" question.  It is manifest that he realized that the question was unequivocal because he continued to include Items "E" (hay fever or allergy), "U" (admission to hospital), and "V" (1978 OUI conviction) on earlier 8500-8s.  These remarks are indicative of his understanding that his 1978 OUI, and thus two subsequent OUIs, were part of the

"MEDICAL HISTORY" section and subject to its instructions. See United States v. Sebaggala, 256 F.3d 59, 63 (1st Cir. 2001) (Defendant's arguments that he "misunderstood the question" and "lacked knowledge that travelers' checks were included in the definition of 'monetary instruments'" were belied by the customs form's plain language, his accurate answers to other questions on the same form, and his understanding that travelers' checks were "monetary instruments" on a prior visit to the United States). Because an applicant's history of OUI convictions is marked as Item "V" on all 8500-8s, Hatch knew he had to include all OUIs on the 8500-8. The "Instructions Page" even advised that if an applicant had been convicted of an OUI, the conviction must be described in detail. See United States v. Doherty, 867 F.2d 47, 69 (1st Cir. 1989) (A defendant is not "immune from prosecution for perjury whenever some ambiguity can be found by an implausibly strained reading of the questions he is asked.").

This is not a situation where Hatch's response was "literally true but not responsive to the question asked and arguably misleading by negative implication." See Bronston v. United States, 409 U.S. 352, 353 (1973). Moreover, Hatch's reliance on United States v. Manapat, 928 F.2d 1097 (11th Cir. 1991), is misplaced. In Manapat, the defendant behaved exactly as Hatch: she omitted three convictions from the 8500-8 and later claimed that she was confused by the ambiguous form. The Manapat court

-8-

agreed, acknowledging that "[a]lthough the single statements 'Record of traffic convictions,' or 'Record of other convictions' may not be ambiguous standing alone, they become quite confusing when buried in a list headed 'Medical History' and purportedly concerned with medical conditions." Id. at 1101.

Manapat is readily distinguishable from the case *sub judice*. It is only persuasive and not binding on this court. Further, the 8500-8 at issue in Manapat was the original 8500-8 Hatch filled out in 1982; this appeal concerns the new 8500-8 that Hatch began filling out in 1992.

There is no fundamental ambiguity here. Hatch's motions for judgments of acquittal were rightly denied, and the issue was properly submitted to the jury. See United States v. Finucan, 708 F.2d 838, 848 (1st Cir. 1983) ("[W]here an answer may or may not be false depending upon possible interpretations of an ambiguous question, it is for the jury to decide whether the defendant has committed perjury.").

**2. Hatch's statement was not literally true and the government presented sufficient evidence for the jury to find him guilty beyond a reasonable doubt.**

Hatch also argues that because there was a reasonable interpretation of the OUI conviction question under which his answer was true, the district court erred in denying his motion for judgments of acquittal. See United States v. Rowe, 144 F.3d 15, 21 (1st Cir. 1998) ("[I]n a false statement prosecution, an answer to

a question is not fraudulent if there is an objectively reasonable interpretation of the question under which the answer is not even false."). Hatch submits two allegedly reasonable interpretations of his "NO CHANGE" answer that would make it literally true: 1) it referred to his history of criminal conviction which, as a condition, had not changed since he had a history before and continued to have a history; 2) in the years in question--1999-2003--there had been "no change" since the filing of the previous year's form. Nevertheless, it is evident that Hatch knew his answer was false and that his other two OUI convictions must be included on the new 8500-8. He presented these arguments at trial and the jury rejected them. Given the "daunting" standard of review, we refuse to impugn the jury's verdict.

"The determination as to [Hatch's] state of mind--his belief in the untruthfulness of his statement--is one which a jury is 'best equipped' to perform." United States v. Reveron Martinez, 836 F.2d 684, 689 (1st Cir. 1988). This court must defer to the jury's verdict. See United States v. McNatt, 813 F.2d 499, 502 (1st Cir. 1987) ("[T]he prosecutor need only produce that quantum of evidence by which a reasonable trier of fact *could* find guilt beyond a reasonable doubt[.]"). The government proved, and a rational jury found beyond a reasonable doubt, that the only sensible reading of Question 18 demanded that Hatch report his entire OUI history. See Finucan, 708 F.2d at 848; United States v.

-10-

Kehoe, 562 F.2d 65, 68-69 & n.2 (1st Cir. 1977) (jury decides "whether an answer was or was not literally true"). Hatch's answer "ITEMS E, U, V PREVIOUSLY REPORTED NO CHANGE" was false because his OUI history had changed – there had been two changes – and is reflected by the continuous inclusion of his 1978 OUI conviction on the annual 8500-8. See Sebaggala, 256 F.3d at 63. Hatch understood that Item "V" was part of the "MEDICAL HISTORY" section and knew that all OUIs must be disclosed. Resultantly, his "NO CHANGE" answer would only be true if he had disclosed the change in his OUI conviction history on prior forms, pursuant to FAA requirements.

The jury was instructed that "[i]f the [8500-8's] question can be interpreted in several ways, then the government has to prove that the answer is false under any reasonable interpretation." Accordingly, the jury necessarily concluded that Hatch's interpretation was unreasonable. See Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one . . . ."); United States v. Freeman, 208 F.3d 332, 344 (1st Cir. 2000) ("Jurors are presumed to follow the court's instructions.").

Hatch also contends that neither his statements nor his March 13, 2003 letter (in which he attempted to explain his omissions) was sufficient for the government to meet its burden of proof, i.e., that "NO CHANGE" was false under any interpretation of the

-11-

question.  As for Hatch's statements, the jury was free to attach whatever significance to the statements it believed was warranted.  As for the letter, Hatch asserts that the jury could have believed it was either directed toward the 1984 and 1996 8500-8s or illustrated his knowledge of the government's interpretation of the 8500-8.  The jury's duty is to decide what to believe.  This credibility dispute must be resolved in favor of the verdict.  The district court did not err in denying Hatch's motion for a judgment of acquittal.

**AFFIRMED.**