**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-2941, 10-1651
_____

CRISTIAN MACRINO LOPEZ PEREZ,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A094-816-937 )
Immigration Judge:  Honorable Margaret R. Reichenberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 4, 2011

Before: BARRY, HARDIMAN and STAPLETON, <u>Circuit</u> <u>Judges</u>

(Opinion filed April 6, 2011 )
_____

OPINION
_____

PER CURIAM

  Cristian Macrino Lopez Perez, a native and citizen of Guatemala, petitions this

Court for review of two decisions of the Board of Immigration Appeals (BIA): one

dismissing his appeal of a denial of asylum, withholding of removal, and relief under the

Convention Against Torture (CAT), and the other denying his motion for reconsideration. We will deny both petitions for review.

## I.

Having fled Guatemala, Lopez Perez illegally entered the United States from Mexico in 1993. He traveled to Trenton, New Jersey, where he settled.

Shortly after arriving in Trenton, he sought the help of a notary and attempted to file an application for asylum. As the years passed with no response, he inquired about the status of his application, only to be told in 1998 that the asylum process could take a long time. Sometime thereafter, he applied for and was denied a work authorization, leading him to believe (correctly) that his asylum application had never been filed.

Lopez Perez took no further action until August of 2006, when he filed an application for asylum. Removal proceedings commenced in December of that year.

In his application materials and in his testimony before the Immigration Judge (IJ), Lopez Perez explained that he had been caught in between military forces and the guerilla uprising of Guatemala's civil war. Near the end of 1992, he was essentially conscripted into a guerilla unit, becoming involved in a plan to ambush members of the military. During the ensuing violence, Lopez Perez attempted to escape, but was captured by military forces. Tied to a wheel, he was forced to witness the rape and murder of a teenaged girl because he either refused or was unable to give the military the information it wanted. He was then stabbed, sodomized with firearms, and knocked unconscious. A local family nursed him back to health, and upon regaining his strength he resolved to

2

leave the country, fearing further reprisals from the military, condemnation from his family, harassment from pro-military forces, and social exile stemming from the sexual assault.

While acknowledging that he was removable and had not filed a timely asylum application, he argued that his failure to do so was attributable to the lingering trauma from his torture by the military. He claimed to suffer from Post-Traumatic Stress Disorder (presenting the opinions of two professionals who came to that diagnostic conclusion), while emphasizing that his attempt to file in 1993 should be a mitigating factor.

Ultimately, the IJ denied his application. She determined that Lopez Perez's reliance on the notary could not suffice to establish the "changed or extraordinary circumstances" required to excuse his failure to timely file. And while he claimed to suffer from a deep depression:

> he was mentally able enough to know [how to] arrange to travel from Guatemala to the United States, to know that a claim for asylum was a possibility within months of his arrival here in 1993 and to find a [notary] within one year of arrival for the purpose of filing an asylum application. . . . Further, he was on some notice that no claim had been filed when he requested work authorization around that time and it was denied. However, he let the matter drop for some 8 years until 2006 when he again chose to seek out someone to help him file a claim for asylum.

A.215. Therefore, he was not statutorily eligible for asylum. A.216. With regard to withholding of removal and the CAT, the IJ did not find his story of past persecution to be credible. However, in the alternative, the IJ observed that "[c]ountry conditions have

3

changed materially in Guatemala since the respondent departed the country in 1993," and thus neither "the military or anyone else would seek to target the respondent for harm upon return to Guatemala." A.217–18.[1] He was granted voluntary departure.

The BIA dismissed his appeal. While adopting the IJ's analysis on asylum timeliness, the BIA rejected her credibility determination, finding "adequate support in the record for [Lopez Perez's] claim that he was, for a brief time, a member of a guerilla group and that he was raped and mistreated by military personnel." A.147. The BIA nevertheless agreed with the IJ that "there has been a fundamental change in [country] circumstances," adopting her analysis of that issue. A.147. Lastly, it found that Lopez Perez was afforded "a full and fair opportunity to present his case," and had shown no evidence of any violation of due process. A.148. It denied a subsequent motion for reconsideration. This counseled petition for review followed.

## II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1). "If the BIA summarily affirms an IJ's order, we review the IJ's decision as the final administrative determination," but "[w]hen the BIA issues a separate opinion . . . we review the BIA's disposition and look to the IJ's ruling only insofar as the BIA defers to it." Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). We defer to those findings that are supported by reasonable,

---

[1] The IJ based her determination on Lopez Perez's testimony and his documentary evidence, which included, inter alia, the State Department's 2006 country report on human-rights practices in Guatemala. See A.390–91 (listing exhibits presented to IJ).

substantial, and probable evidence derived from the totality of the record, and will reverse the BIA's decision only if any reasonable fact-finder would be "compelled" to conclude to the contrary. Id.; Wong v. Att'y Gen., 539 F.3d 225, 230 (3d Cir. 2008). Our review of the BIA's legal determinations is *de novo* and is subject to the principles of Chevron deference. Pierre v. Att'y Gen., 528 F.3d 180, 184 (3d Cir. 2008); see also Rranci v. Att'y Gen., 540 F.3d 165, 171 (3d Cir. 2008) ("[W]e review the BIA's legal conclusions de novo, including both pure questions of law and applications of law to undisputed facts.").

Denial of a motion to reconsider under 8 C.F.R. § 1003.2(b) is reviewed for abuse of discretion. INS v. Doherty, 502 U.S. 314, 323 (1992); Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir. 2004) (discretionary decisions are not disturbed unless "arbitrary, irrational, or contrary to law" (citing Tipu v. INS, 20 F.3d 580, 582 (3d Cir. 1994))).

III.

A) Timeliness of Asylum Application

Lopez Perez argues that the BIA erred in determining that his asylum application was untimely. But under the plain language of 8 U.S.C. § 1158(a)(3), we lack "jurisdiction to review any determination of the Attorney General" under those provisions governing timeliness and extraordinary/changed circumstances. See Gabuniya v. Att'y Gen., 463 F.3d 316, 320 n.4 (3d Cir. 2006); Sukwanputra v. Gonzales, 434 F.3d

5

627, 635 (3d Cir. 2006).  We therefore will not address this claim.[2]


B)  Withholding of Removal

In order to qualify for withholding of removal, Lopez Perez was required to show with objective evidence that it was more likely than not that he would be persecuted in Guatemala.  See 8 U.S.C. § 1231(b)(3)(A); Gabuniya, 463 F.3d at 320–21.  While past persecution yields a presumption of future persecution, that presumption can be rebutted by a finding of fundamentally changed circumstances, supported by a preponderance of the evidence.  8 C.F.R. § 208.16(b)(1)(i)–(ii); Camara v. Att'y Gen., 580 F.3d 196, 206 n.15 (3d Cir. 2009).

Although the BIA reversed the IJ's credibility determination to find that Lopez Perez "ha[d] demonstrated past persecution," A.147, it agreed with the IJ that there had "been a fundamental change in circumstances."  A.147.

> Country conditions have changed materially in Guatemala since the respondent departed the country in 1993.  The civil war in which he participated as a guerilla member ended in 1996.  Hence, whatever guerrilla group he joined is no longer active.  In addition, the numerous background materials submitted by the respondent fail to show that former guerilla members are currently being targeted by the government or anyone else.  There appears to be no likelihood that the military or anyone else would seek to target the respondent for harm upon return to Guatemala

A.217–18 (citations omitted) (IJ's opinion).

---

[2] To the extent that Lopez Perez argues a constitutional dimension for this claim, we will address it in subsection D, *infra*.  See Jarbough v. Att'y Gen, 483 F.3d 184, 188 (3d Cir. 2007).

6

The record contains sufficient evidence to support this finding of fundamentally changed circumstances in Guatemala, thus rebutting a presumption of future persecution. See INS v. Elias-Zacarias, 502 U.S. 478, 483 (1992). The cessation of Guatemala's civil war, examined in tandem with the details of Lopez Perez's time with the guerillas—he never fought against the military, he did not wear a uniform, he was only with the group for two months, see A.210—suggests that his fear of future persecution is no longer objectively reasonable. To be sure, the same evidentiary record reveals that, to this day, Guatemala remains plagued by systemic social problems, such as lynchings attributable to the "failure of the justice sector to guarantee security," (A.440) but none compels the conclusion that Lopez Perez's brief history with the guerillas would render him more likely than not to be persecuted upon his return.[3] Cf. Bartolo-Diego v. Gonzales, 490 F.3d 1024, 1028 (8th Cir. 2007) ("Even though violence and criminality still plague Guatemala, nothing in the State Department reports indicate that those who supported the Guatemalan government before the end of the civil war are targets.").

C) Convention Against Torture

In order to obtain relief under the CAT, Lopez Perez was required to show that he would be "more likely than not [to] be tortured if removed to the proposed country of removal" at the "instigation of or with the consent or acquiescence of a public official or

---

[3] To the extent that Lopez Perez raised the issue of economic persecution below, see A.154–55, and it is now properly before this Court, the same evidence that fails to

7

other person acting in an official capacity." 8 C.F.R. §§ 208.16(c)(2), .18(a)(1); see also Tarrawally v. Ashcroft, 338 F.3d 180, 187–88 (3d Cir. 2003).

Lopez Perez argues that CAT relief should have been granted because "more likely than not, [he] will be persecuted, tortured and killed if he is returned" to Guatemala. He does not support this prediction with evidence. The BIA concluded that Lopez Perez would not face "other serious harm" from a return to Guatemala, see A.147, and such an assessment is adequate to support a denial of relief under the CAT. Moreover, the IJ found there to be "no likelihood that the government of Guatemala would seek to torture the respondent because he was a member of some unidentified guerrilla group for a few months in 1992 to 1993." A.218. Accordingly, Lopez Perez has not met his burden under CAT.

D) Due Process

Lopez Perez asserts that the IJ was biased against him, arguing that this bias violated his right to Due Process as guaranteed by the Fifth Amendment. See, e.g., Galicia v. Gonzales, 422 F.3d 529, 539 (7th Cir. 2005) (concluding that the actions of an IJ, which included "de facto cross-examination" and imposing a "strict time limit" on the petitioner, sufficed to deny due process). A due process violation would allow the investigation of claims otherwise forestalled by jurisdictional bars. 8 U.S.C. § 1252(a)(2)(D); Jarbough v. Att'y Gen., 483 F.3d 184, 188 (3d Cir. 2007). But see

---

compel a finding of future physical persecution is insufficient to support a determination of future economic persecution.

Pareja v. Att'y Gen., 615 F.3d 180, 187 (3d Cir. 2010) ("If a claim is frivolous, however, we lack jurisdiction to review it, no matter its label. . . . [A] party may not dress up a claim with legal clothing to invoke this Court's jurisdiction.").

The BIA concluded that Lopez Perez was afforded "a full and fair opportunity to present his case." A.148. We find ample record support for this determination. The hearing transcript reveals an IJ who was assertive and perhaps a bit prickly—especially towards counsel—but was altogether fair. We can see no indication, moreover, that Lopez Perez was kept from presenting evidence. And even assuming *arguendo* that the IJ's conduct violated due process, Lopez Perez cannot show prejudice, as the sole decision attributable to "bias"—an adverse credibility finding—was rejected by the BIA on appeal. See Delgado-Sobalvarro v. Att'y Gen., 625 F.3d 782, 787 (3d Cir. 2010) ("To establish a violation of due process, the petitioners must show that substantial prejudice resulted from the alleged procedural errors.").

Nor do we find support for Lopez Perez's second constitutional claim: that the BIA failed to review "his entire record." Bare assertions of institutional ignorance to the contrary, "a complete lack of knowledge of Guatemalan history in addition to a complete disregard for the current country conditions," is not the "only explanation" for the BIA's decision, as he claims. [4] To cite one example: while the plight of the wife of Guatemala's

---

[4] Of course, a "complete lack of knowledge" of relevant history may best be remedied by submissions to the tribunal. It was not the totality of Guatemalan history that was before the IJ and BIA, but merely selections presented to those tribunals via record evidence. If evidence suggesting a greater connection between current country

9

human-rights ombudsman may be both tragic and indicative of the oft-conceded challenges faced by Guatemala, it does not logically mandate finding that Lopez Perez, or similarly situated members of his cadre, would be persecuted or tortured in the country. He fails to point to any dispositive evidence ignored by the BIA that would indicate a constitutional violation or a conclusion based on an irrational and incomplete review of the record. Blanket assertions do not a due-process violation make.

E) Motion for Reconsideration

Based on the above, we find no abuse of discretion in the BIA's denial of the motion for reconsideration.

IV.

While we have the utmost sympathy for the trauma Lopez Perez faced and his understandable aversion towards returning to Guatemala, sympathy is not a sufficient foundation for altering the administrative conclusions on the record currently before us. Thus, for the foregoing reasons, we will affirm the BIA's orders and deny the petitions for review.

---

conditions and treatment of former guerilla officers was available, it should have been presented during the initial presentation of the claim, and not during a motion for reconsideration, at which point its usefulness had expired.