HOWARD, Circuit Judge.
A jury convicted the defendant, Hazen Shaw, on one count of possessing an unregistered short-barreled shotgun in violation of the National Firearms Act. 26 U.S.C. §§ 5861(d), 5871. At trial, he moved for a judgment of acquittal, Fed. R.Crim.P. 29, contending that the Government failed to present sufficient evidence that he knew the shotgun’s barrel was shorter than 18 inches, the statutory characteristic subjecting the weapon to the Act. See 26 U.S.C. § 5845(a). The trial court denied the motion, and Shaw now appeals his conviction.
I. BACKGROUND
The question on appeal is one of sufficing of the evidence, so we recite the relevant factual background in the light most favorable to the verdict. See United States v. Gonzalez-Ramirez, 561 F.3d 22, 24 (1st Cir.2009). On a Sunday afternoon in November 2008, state law enforcement officers received a complaint about gunshots being fired in a wooded residential area in Springfield, Maine. Upon responding, State Trooper Barry Meserve was informed by a resident that the suspected vehicle had just sped away from the scene; Trooper Meserve pursued the departing taillights. The vehicle took flight down the dirt road, and a chase ensued. With considerable effort, including the aid of other officers and two road blocks, the police finally stopped the vehicle. Still not dissuaded, the driver rammed his sedan into a police vehicle parked behind him. *362 Two officers rapidly approached the sedan on foot with weapons drawn, demanding that the driver show his hands. Maine Warden Service Sergeant Ronald Dunham heard “the action of a gun” like a “pump-action gun being operated” and saw the driver “rifling the action of [the] gun.” Shaw, the automobile’s driver, then put his hands out the window and was immediately apprehended. He was the only person in the car, and a 12 gauge sawed-off “Mossberg 500A” shotgun was found lying near him within ready reach. The sound heard by Dunham was later attributed to the weapon being unloaded.
Shaw was arrested for eluding a police officer and for reckless conduct. A subsequent search of the automobile revealed various items, including two knives and a hatchet, as well as a 20 gauge shotgun with a sawed-off stock in the trunk. A single expelled or spent 12 gauge shotgun round was found between the driver and passenger seats. Shaw himself was carrying, in a pack and on his hunting belt, different types of ammunition, some boxed and some loose. Additional evidence suggested that Shaw had been engaging in some type of hunting activity while seated in his car, by shooting at game from his open car window.
State Trooper Michael Johnston, an evidence technician, arrived at the scene and quickly noticed that the 12 gauge shotgun appeared to be too short for federal guidelines. He further observed that the stock of the weapon had been cut off and covered with duct tape, the gun’s barrel “look[ed] like it also had been cut,” and “a homemade sling” was attached “in the form of a yellow-like nylon rope.” The outside of the gun barrel still bore printing indicating that the original barrel length had been 28 inches. While the weapon’s overall length was about 29 inches, the barrel itself, measured internally, was sixteen-and-a-quarter inches in length. Because the length of the shortened barrel of the 12 gauge was less than 18 inches, the weapon was subject to federal registration requirements. See 26 U.S.C. §§ 5845(a), 5861(d). Shaw was subsequently charged with possession of an unregistered firearm. See 26 U.S.C. §§ 5861(d), 5871. As noted, the trial court rejected Shaw’s Rule 29 motion for judgment of acquittal on that charge, and the jury rendered a guilty verdict. This timely appeal followed.
II. STANDARD OF REVIEW
We review de novo the denial of a Rule 29 motion to determine whether the body of proof as a whole, including direct and circumstantial evidence, was sufficient for a rational jury to conclude beyond a reasonable doubt that the government established each element of the crime. United States v. Pérez-Meléndez, 599 F.3d 31, 40 (1st Cir.2010). In so doing, we consider the evidence, including all reasonable inferences drawn therefrom, in the light most favorable to the jury’s verdict. Id. Individual pieces of evidence viewed in isolation may be insufficient in themselves to prove a point, but in cumulation may indeed meet the mark. United States v. Spinney, 65 F.3d 231, 234 (1st Cir.1995). Further, “[a]ll credibility disputes are to be resolved in the verdict’s favor, and this court need not believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in a plausible rendition of the record.” United States v. Hatch, 434 F.3d 1, 4 (1st Cir.2006) (internal quotations omitted).
In this case, the question is whether there was enough evidence to permit a rational jury to conclude beyond a reasonable doubt that the defendant knew that the length of the barrel of the shotgun was *363 less than 18 inches. See 26 U.S.C. §§ 5845(a)(1)-(2), 5861(d).
III. GOVERNING LAW AND ANALYSIS
The National Firearms Act, 26 U.S.C. §§ 5801-5872, imposes strict regulations on certain statutorily defined “firearms.” Pertinent here, Congress has deemed it unlawful for any person “[t]o receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.” 26 U.S.C. § 5861(d). A “firearm” generally constitutes certain shotguns and rifles, machine-guns, silencers and destructive devices; firearm feature terminology is further defined by statute. See 26 U.S.C. § 5845. In the context of this appeal, a “firearm” means “a weapon made from a shotgun if such weapon as modified has ... a barrel ... of less than 18 inches in length.” 26 U.S.C. § 5845(a)(2). Failure to comply with the registration requirement is punishable by a fine of $10,000 and up to ten years of imprisonment. 26 U.S.C. § 5871.
While the defendant’s knowledge is at the heart of this appeal, the statute itself does not expressly contain a mens rea requirement. The United States Supreme Court addressed this statutory silence in Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). There, the defendant had been convicted of possessing an unregistered “machinegun” firearm in violation of section 5861(d). 511 U.S. at 614, 114 S.Ct. 1793. The firearm, a semiautomatic AR-15 rifle had been modified to render it capable of fully automatic firing; the modified firing feature subjected the weapon to the Act’s registration requirement as a machinegun. See id.; see also 26 U.S.C. § 5845(a)(6), (b) (defining “machinegun” firearm). The trial court had not required the jury to find that the defendant knew that the weapon possessed the characteristic (which resulted largely by an internal modification) rendering it a machinegun under the statute. Staples, 511 U.S. at 603-04, 114 S.Ct. 1793. Overturning Staples’ conviction, the Court held that the government “should have been required to prove beyond a reasonable doubt that [Staples] knew the weapon he possessed had the characteristics that brought it within the statutory definition of a machinegun,” reasoning that Congress had not clearly dispensed with the common law mens rea requirement. Id. at 602, 616-20, 114 S.Ct. 1793.
The government assumes that Staples ’ scienter requirement applies in this case involving a sawed-off weapon. For purposes of our analysis, so will we.[1]
*364 The defendant contends that the record contains “no evidence that he knew the barrel of the shotgun was less than 18 inches.” According to Shaw, the one-and-three-quarters inch difference between the barrel’s actual length, measured internally, and the prescribed length cannot support the proposition that he could have determined its length just by looking at it. Thus, he argues, establishing knowledge required evidence that he was the person who actually shortened the barrel from its original length, or that he owned the gun long enough “to become sufficiently well acquainted with its characteristics to have ascertained its length with the precise degree of accuracy (a margin of error of less than 10 percent)” for him to have visually discerned that the barrel was shorter than 18 inches. He also discounts the evidence of flight as readily susceptible to explanations other than culpable knowledge of gun barrel length.
After carefully examining the record, we conclude that it contains sufficient evidence to support the jury’s finding beyond a reasonable doubt that Shaw knew that the barrel of the 12 gauge sawed-off shotgun was shorter than 18 inches. His acquaintance with the particular weapon, his familiarity with firearms generally, and the external and readily observable shortened feature of the gun’s sawed-off barrel permitted the jury to infer Shaw’s knowledge relative to barrel length. We explain below.
First, the evidence allowed the jury to rationally infer that Shaw was well acquainted with this particular shotgun, which had a shortened stock covered with duct tape and ,an immediately apparent sawed-off barrel. See United States v. Giambro, 544 F.3d 26, 30 (1st Cir.2008) (sufficient evidence of scienter based in part on defendant’s familiarity with the particular weapon). There was evidence that he was engaging in some type of hunting excursion and that he fired the 12 gauge from inside the confines of his automobile through an open window. Indeed, the gun bore a “homemade sling” of “yellow-like nylon rope,” apparently for ease of use. Also, there was evidence that Shaw deftly unloaded the shotgun while seated in a constricted area, the driver’s seat of his vehicle, while law enforcement officers descended upon him with guns drawn amidst an intense effort to secure his custody.
Maneuvering the shotgun inside the close confines of his car during his sport and during the highly charged circumstances of his apprehension provides ample factual foundation for the jury to rationally conclude that he was quite familiar with this particular weapon and appreciated its smaller stature — including the short barrel feature. See Staples, 511 U.S. at 615 n. 11, 114 S.Ct. 1793 (noting that defendant’s use of the weapon can make its regulated characteristics immediately apparent); United States v. Jones, 222 F.3d 349, 352 (7th Cir.2000) (noting that evidence defendant observed and handled the sawed-off shotgun can be sufficient for jury to reasonably infer his knowledge of the weapon’s statutory characteristic relative to length of gun or length of barrel); cf. United States v. Michel, 446 F.3d 1122, 1131 (10th Cir.2006) (collecting cases on same, but holding that where “government presented absolutely no evidence that [defendant] ever observed or handled the gun,” the record was insufficient to establish defendant’s mens rea relative to barrel length); United States v. Nieves-Castaño, 480 F.3d 597, 601-02 (1st *365 Cir.2007) (finding scienter evidence insufficient where defendant had not observed the relevant external feature of the weapon, observation of weapon would not alert a layman to such relevant feature, and defendant had not used the gun to know that it operated as a maehinegun).
Second, the evidence allowed the jury to rationally infer that Shaw was familiar with firearms, more so than an average layman, and thus able to meaningfully distinguish between the physical characteristics and capabilities of different guns, including the Mossberg. See Giambro, 544 F.3d at 30 (court’s holding on sufficiency of scienter evidence was based in part on defendant’s heightened knowledge and interest in firearms). For example, he was wearing a pack of ammunition suitable to different shotguns and different hunting purposes, and had more of such ammunition in a hunting-style belt holder and strewn inside his vehicle. Also, he chose to use his 12 gauge shotgun in his sporting activity that day, with its crude strap apparently for ease of use and with its shortened stock and barrel, rather than using the 20-gauge found in the trunk, which had a shortened stock but a much-longer intact barrel. Shaw’s possession of two different shotguns of distinctly different barrel lengths and with varying ammunition, and his apparent hunting propensity and peculiar use of the short-barrel gun allowed the jury to conclude that he was an experienced hunter who understood the desirability of different weapons in different circumstances. This evidence allowed the jury to infer that Shaw knew about distinct characteristics of different guns generally, and particularly those of his Mossberg pump. See Giambro, 544 F.3d at 30. And again, Shaw’s aptitude in maneuvering the 12 gauge inside his vehicle for sport and during the charged interaction with law enforcement further displayed his knowledge about and experience with shotguns.
Third, the shortened nature of the shotgun’s barrel is an external characteristic, and the evidence permitted the jury to infer that the barrel length of less than 18 inches was readily observable to the defendant. See Giambro, 544 F.3d at 30 (scienter evidence found sufficient based in part on the visual appearance of short barrel, which revealed that the statutory characteristics were “evident from looking at the weapon”). Trooper Johnston testified that the barrel looked like a portion had been cut off, and its outside still bore printing indicating that the barrel’s original length had been 28 inches, a significant stretch lengthier than the sixteen-and-a-quarter inches. See Staples, 511 U.S. at 615 n. 11, 114 S.Ct. 1793 (noting that defendant’s knowledge of the regulated characteristic can be inferred from “any external indicators signaling the nature of the weapon”). Moreover, Johnston had immediately noticed the short stature of the 12-gauge barrel when he arrived at the scene, raising his concern about whether it measured the requisite 18 inches. See Giambro, 544 F.3d at 30 (noting testimony that police detective recognized the weapon to be a firearm subject to federal regulation due to its short barrels “as soon as he saw it”).
Evidence relating to how the gun barrel was measured also is telling. Special Agent Kenneth Stengel of the Bureau of Alcohol, Tobacco, Firearms and Explosives testified that he followed standard procedure when measuring the barrel’s length, which involved closing the bolt of the shotgun, inserting a wooden dowel, and measuring the dowel mark to the bolt face. Stengel testified that this process, which is performed on the inside of the barrel, resulted in “measuring] to the furthest point on the barrel” as a “way of giving the benefit of the doubt to the defendant.” *366 This testimony gives rise to a reasonable inference that the shotgun barrel when viewed externally appeared to be even shorter than the internally measured sixteen-and-a-quarter inches.[2] Moreover, the weapon’s barrel was in fact one-and-three-quarters inches shorter than the prescribed minimum. See United States v. Green, 435 F.3d 1265, 1273 (10th Cir.2006) (holding that evidence of knowledge about barrel length was sufficient in part because shotgun barrel was 16.5 inches; witness testified that the barrel appeared short and “anyone who looked quickly at the gun would notice it was short or that the barrel had been sawed off’); Miller, 255 F.3d at 1287 (evidence that shotgun barrel was fifteen-and-one-half inches permitted jury to infer that defendant knew barrel was shorter than eighteen inches); Moore, 97 F.3d at 564 (the jury could have reasonably inferred defendant’s knowledge that rifle was shorter than 16 inches by observing the weapon, which was thirteen- and-one-sixteenth inches long).
Other evidentiary details provided the jury with indicia that, from looking at the weapon, the defendant would have known that the barrel was shorter than 18 inches. Photographs of the scene were displayed to the jury, including one depicting the interior of the front seat of the vehicle where the 12-gauge was resting pointed toward the floorboard. Another photograph displayed the shotgun on the vehicle’s hood beside a tape measure showing the overall gun length. These pictures gave the jury the opportunity to see the weapon — and its barrel — in proportion to other real life objects, and even juxtaposed with a tape measure. Moreover, the gun was admitted into evidence, allowing jurors to see the weapon for themselves. Thus, the jury had ample opportunity to reach its own determination as to whether the statutorily prescribed short barrel length was clear from simply looking at the shotgun. See Giambro, 544 F.3d at 30 (noting that “[t]he jury saw the weapon and therefore could reach its own determination of whether the characteristics were clear from simply looking at the [weapon]”); United States v. Ortiz, 966 F.2d 707, 712 (1st Cir.1992) (noting that “jurors are neither required to divorce themselves from their common sense nor to abandon the dictates of mature experience”); see also United States v. Sanders, 520 F.3d 699, 701 (7th Cir.2008) (noting that jury could infer that defendant knew barrel length was shorter than 18 inches from evidence that defendant handled the shotgun if its appearance would have revealed that characteristic); Green, 435 F.3d at 1273 (upholding conviction for possession of unregistered firearm under section 5861(d) where testimony established that sawed-off shotgun with barrel of 16.5 inches obviously appeared short and “jurors were permitted to examine the shotgun firsthand, allowing them to make their own conclusions as to whether it was apparent the gun was sawed-off’).
Despite this record panoply on scienter, Shaw contends that his case fails to reach the quantum of sufficient evidence set forth in Giambro. Seeking to negate any inference that he is knowledgeable about guns and their distinguishing characteristics, Shaw asserts that the evidence against him cannot compare to Giambro’s extensive gun collection (more than 200 weapons) and ready discernment that two had been seized — the evidentiary display *367 of his “specialized knowledge and interest in firearms.” Giambro, 544 F.3d at 30. That there may have been extensive evidence in Giambro, however, does not diminish the meaningful evidence here that Shaw was well acquainted with the particular 12 gauge shotgun at issue, and with shotguns in general.
Shaw also relies on the fact that the discrepancy between the actual barrel length and the required eighteen inches amounts to only one-and-three-quarters inches. We disagree that evidence of a special ability to calculate length based purely on visual inspection was necessary for the jury to reasonably conclude that the defendant knew that the Mossberg’s barrel was shorter than 18 inches. As we observed earlier, the evidence permitted the jury to conclude that the barrel’s length visually appeared to be some stretch shorter than the actual internal measurement of sixteen-and-a-quarter inches. In any event, the totality of the evidence permitted the jury to conclude for itself that the barrel appeared shorter than 18 inches.
Finally, Shaw urges us to discount the flight evidence. He contends that his motivation for giving chase could have been premised on sundry culpable reasons independent of his knowledge on gun barrel length, ranging from unlawful hunting on a Sunday to unlawful possession of a loaded firearm in the passenger compartment of a car. Rather than parsing Shaw’s motivations for his conduct, the jury rationally could have concluded that he was a knowledgeable hunter who flagrantly disregarded the law, including knowingly possessing a shotgun with a barrel of less than 18 inches in length. Likewise, we are unmoved by the lack of evidence showing that he attempted to conceal the weapon; another plausible read by the jury was simply that Shaw lacked the time, opportunity or aforethought to try to hide the weapon. See United States v. Rodríguez-Durán, 507 F.3d 749, 758, 759 (1st Cir.2007) (observing that “[t]he government need not succeed in eliminating every possible theory consistent with the defendant’s innocence” to secure a conviction, and that the jury “may reject even a reasonable hypothesis inconsistent with guilt, so long as the evidence also reasonably supports culpability” (internal quotations and citation omitted)). In any event, even putting aside the flight evidence, the government satisfied its evidentiary burden to prove beyond a reasonable doubt that Shaw knew that his 12 gauge shotgun had a barrel shorter than 18 inches.
One brief matter remains. When charging the jury, the district court instructed on the meaning of “knowingly” and also informed the jury that it “may infer” knowledge in the event that it found the necessary predicate components of willful blindness. See Pérez-Meléndez, 599 F.3d at 41 (noting that “[w]illful blindness serves as an alternate theory on which the government may prove knowledge”); United States v. Azubike, 564 F.3d 59 (1st Cir.2009) (discussing when a case warrants willful blindness charge); United States v. Brandon, 17 F.3d 409, 451-54 (1st Cir.1994) (discussing boundaries of willful blindness charge). In its brief, the government argued in support of the willful blindness instruction and the evidence supporting a willful blindness jury finding as a basis to affirm. We note that the defendant did not challenge the jury instruction either at trial or in the opening brief. Nevertheless, given our conclusion that the evidence supports a finding of actual knowledge, we see no need to address whether the evidence also permitted the jury to find scienter premised on willful blindness.
*368 IV. CONCLUSION
That a different jury could have rendered a different verdict does not undermine the legal sufficiency of Shaw’s conviction. See Hatch, 434 F.3d at 4. We do not shy away from overturning jury verdicts for lack of sufficient evidence when the record demands it, see O’Laughlin v. O’Brien, 568 F.3d 287, 301 (1st Cir.2009) (collecting cases), and we have done so in the context of the scienter element for unlawful conduct involving a “firearm,” see Nieves-Castaño, 480 F.3d at 602. After taking a hard look at the record in this case, we are satisfied that the jury’s verdict is not based on sheer speculation, pure conjecture or improperly stacked inferences, but is fully supported by sufficient evidence.
The judgment is affirmed.

. Prior to Staples, we had held, in assessing a conviction for aiding the transfer of a “firearm” under the National Firearms Act, that proof of knowledge that a sawed-off shotgun barrel measured less than 18 inches was not required. United States v. DeBartolo, 482 F.2d 312 (1st Cir.1973). Since Staples, however, we have applied Staples ’ mens rea requirement when reviewing a conviction for unlawful possession of a combination shotgun and rifle under section 5861(d), United States v. Giambro, 544 F.3d 26, 29 (1st Cir.2008), and for unlawful possession of a machinegun under 18 U.S.C. § 922(o), United States v. Nieves-Castaño, 480 F.3d 597, 599-600 (1st Cir.2007).
Several courts have read Staples to require proof that a defendant knew that an unregistered sawed-off weapon or its barrel was shorter than the statutorily prescribed length. See United States v. Michel, 446 F.3d 1122, 1129-30 (10th Cir.2006); United States v. Miller, 255 F.3d 1282, 1286-87 (11th Cir.2001); United States v. Gergen, 172 F.3d 719, 723-24 (9th Cir.1999); United States v. Reyna, 130 F.3d 104, 108-09, n. 3 (5th Cir.1997); United States v. Edwards, 90 F.3d 199, 205 (7th Cir.1996); United States v. Starkes, 32 F.3d 100, 101 (4th Cir.1994)(per curiam). At least one circuit, however, has held that in the context of a "quasi-suspect” weapon (such as “a hand *364 grenade, sawed-off shotgun or Molotov cocktail”), the government need only prove that the defendant knowingly possessed the item. United States v. Dukes, 432 F.3d 910, 915-16 (8th Cir.), cert. denied 547 U.S. 1155, 126 S.Ct. 2307, 164 L.Ed.2d 827 (2006).

. The record suggests that when measured externally, the length of the shotgun barrel was fifteen-and-a-half inches, further supporting that the jury could have rationally con-eluded the barrel’s visual appearance alerted the defendant to the fact that it was shorter than 18 inches.