# United States Court of Appeals
## For the First Circuit

No. 19-2014

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ R. TORRES-PÉREZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Lynch and Selya, Circuit Judges,
and McConnell, District Judge.[*]

Eric Alexander Vos, Federal Public Defender and Franco L. Pérez-Redondo, Assistant Federal Public Defender for Defendant, Appellant.
Angela M. Miller, Attorney, Appellate Section Criminal Division, with whom W. Stephen Muldrow, Assistant United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, Brian C. Rabbit, Acting Assistant Attorney General, and Robert A. Zink, Acting Principal Deputy Assistant Attorney General, were on brief, for Appellee.

December 30, 2021

---

[*] Of the District of Rhode Island, sitting by designation.

**MCCONNELL, District Judge.** José Torres-Pérez (Mr. Torres) was convicted of unlawful possession of a machine gun in violation of 18 U.S.C. § 922(o) after a four-day jury trial. He was sentenced to 33 months in prison followed by three years' supervised release. Mr. Torres argues on appeal that there was insufficient evidence on which to convict him on the possession of a machine gun charge and that the district court erred in admitting photographs of various firearms and accessories found on Mr. Torres' cell phone. After a thorough review, we reject Mr. Torres' challenges and affirm the judgment below.

I.   Background

We recount the facts in the light most favorable to the jury verdict, consistent with the court record below. United States v. Noah, 130 F.3d 490, 493 (1st Cir. 1997).

On February 13, 2018, two Puerto Rico Police Department officers, Officers Jonathan Serrano-Martinez, and Jumariel Carrion-Ramirez, were driving through the Maternillo Ward section of Fajardo to serve an arrest warrant on an unrelated individual. Their vehicle was unmarked; they were followed by a marked police car.

Officers Serrano and Carrion saw a black pick-up truck parked near some rooster cages. Mr. Torres' body was halfway in on the driver's side of the truck. Another individual was in the passenger seat. Officer Serrano was driving and observed Mr. Torres

become "alert" as the unmarked and marked police cars approached. Officer Serrano saw Mr. Torres reach into the waistband of his shorts, pull out a firearm with an extended magazine, and throw it into the truck's driver's side seat. Mr. Torres then ran away from the truck. Officer Serrano yelled, "Firearm!" causing Officer Carrion to take notice. Officer Carrion saw Mr. Torres run in front of their unmarked car.

Officers Serrano and Carrion ran after Mr. Torres and his passenger. Officer Serrano decided to end his pursuit to go back to the truck.  Both men ultimately got away when Officer Carrion lost sight of them.

Back at the truck, Officer Serrano observed a 9mm Glock pistol on the driver's seat. He saw that the gun appeared to have been altered to add a chip allowing it to fire automatically. The extended magazine attached had twenty-two rounds of 9mm caliber ammunition. Inside the truck, Officer Serrano found a wallet containing Mr. Torres' New York driver's license, social security card, and a cell phone as well as a receipt with Mr. Torres' name on it. There was also a box of .40 caliber ammunition. The truck was impounded.

Officer Serrano returned to same area several times looking for Mr. Torres. He located him within the next week and brought him to the police station. Mr. Torres told police that he borrowed the truck to buy animal feed and denied knowing about the

Glock. He was arrested and later indicted for unlawful possession of a machine gun.

Before the jury trial but after the court's deadline to file pretrial motions, the government filed a motion in limine to admit four photographs of firearms and accessories retrieved from Mr. Torres' cell phone. The Glock at issue was not in any of the photographs. The government also filed a motion to preclude Mr. Torres from introducing during cross-examination of a federal agent his own self-serving statement that he did not possess the firearm. The district court denied both motions for being filed out of time but indicated that these issues could be raised during trial.

The government raised admission of the photographs as evidence again before opening statements. It advocated that the photographs were admissible to prove that Mr. Torres generally knew about firearms and specifically knew the Glock found in the truck had been transformed into an automatic weapon. The government intended to introduce the photographs through the data analyst who retrieved them from Mr. Torres' cell phone without comment or opinion about their significance.

Mr. Torres objected on relevance grounds because none of the photographs were of the gun in question and it was not known who took or sent Mr. Torres the pictures. He also objected that they were prejudicial and confusing propensity evidence. The

district court disagreed and allowed the government to use this evidence at trial.

The jury was allowed to view the Glock found in the truck. It also heard expert testimony that the homemade alterations on the gun – the back plate on the slide had a piece attached and was not covered by polymer and a Glock chip welded on to a piece of steel attached to the slide – made it obvious that the Glock was a machinegun. The expert testified that a chip like that is added solely to convert a semi-automatic firearm into a fully automatic machinegun. The expert confirmed his observation by testing the Glock, pulling the trigger to observe the unloaded gun's slide, and then loading the gun and firing it, shooting off three rounds with one trigger pull. He also told the jury that the unaltered Glock could hold fifteen rounds of ammunition and the high-capacity magazine attached to the Glock found in the truck held up to thirty rounds.

As evidence that Mr. Torres had knowledge of guns generally and knew what an altered Glock looked like, the government questioned a digital analyst with the Puerto Rico Police Department who recovered the four photographs from Mr. Torres' cell phone. The photographs depicted a gun with an extended magazine, a hand holding the same gun, a pistol with a drum magazine attached beside additional extended magazines, and a gold-plated gun next to nine bullets. The analyst testified that

he retrieved three of the photographs from Mr. Torres' phone's WhatsApp account; he could not identify from where the final photograph came. He could tell that the photographs had been accessed or received in the months before Mr. Torres' arrest.

After the close of the government's case, Mr. Torres moved for an acquittal under Federal Rule of Criminal Procedure 29, which the district court denied. He then took the stand in his own defense. He testified that he borrowed the truck from a man named Lazaro who paid him to take care of and train Lazaro's roosters. He admitted to taking Lazaro's truck on the date of the incident. He left his things, including his wallet and phone, in the truck because he did not have any pockets in his shorts. He told the jury that he ran from police because he became scared when he saw people with guns dressed in plain clothes, driving in an unmarked car. He admitted that the cell phone was his but denied taking any of the four photographs and did not know who sent them to him. Mr. Torres told the jury that he had never had, used, or carried a gun. At the close of the evidence, Mr. Torres again moved for judgment of acquittal. The district court denied his motion.

The jury found Mr. Torres guilty. Mr. Torres was ultimately sentenced to thirty-three months in prison with three years of supervised release.

II.  Analysis

Mr. Torres contends that his conviction cannot stand given the district court's errors. We discuss these alleged errors seriatim, but ultimately conclude that nothing that Mr. Torres raises in his appeal requires reversal.

A.  Rule 29

Mr. Torres' first point of error involves the district court's denial of his motions for judgment of acquittal under Rule 29. Mr. Torres argues that the district court erred in denying the acquittal motion because the government failed to present sufficient evidence on which a jury could find that he both possessed the gun and knew it had the same characteristics as a machinegun.

We consider an appeal on this ground de novo. United States v. Santos-Rivera, 726 F.3d 17, 23 (1st Cir. 2013). Specifically,

> We examine the evidence, both direct and circumstantial, in the light most favorable to the jury's verdict. We do not assess the credibility of a witness, as that is a role reserved for the jury. Nor need we be convinced that the government succeeded in eliminating every possible theory consistent with the defendant's innocence. Rather, we must decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime.

United States v. Troy, 583 F.3d 20, 24 (1st Cir. 2009) (citations and internal quotation marks omitted).

1.    <u>Count One – Possession of a Machine Gun</u>

Mr. Torres was convicted of possessing a machinegun. "To establish a violation of § 922(o), 'the government must prove that 1) the defendant possessed or transferred a machinegun 2) with knowledge that the weapon had the characteristics to bring it within the statutory definition of a machinegun.'" <u>United States</u> v. <u>Tanco-Baez</u>, 942 F.3d 7, 26 (1st Cir. 2019) (quoting <u>United States</u> v. <u>Olofson</u>, 563 F.3d 652, 659 (7th Cir. 2009). "A machine gun is defined as 'any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.'" <u>United States</u> v. <u>Nieves-Castaño</u>, 480 F.3d 597, 599 (1st Cir. 2007) (quoting 26 U.S.C. § 5845(b)).

To meet the knowledge requirement threshold, the government must prove that "the defendant had knowledge of the characteristics that brought the gun within the statutory definition, and not that []he had knowledge that the gun was in fact considered a machine gun under federal law." <u>Id.</u> "The requisite mens rea may be established by circumstantial evidence," which includes "external indications signaling the nature of the weapon." <u>Id.</u> at 601 (quoting <u>Staples</u> v. <u>United States</u>, 511 U.S. 600, 615 n.11 (1994)).

The government presented evidence that Officer Serrano himself observed Mr. Torres remove a gun with an extended magazine

- 8 -

from the waistband of his shorts and throw it into the truck next to which he was standing. Upon Officer Serrano's return to the truck after his unsuccessful pursuit of Mr. Torres, he testified that he saw the same gun on the driver's seat. The government presented additional evidence connecting Mr. Torres to the truck, including that his wallet with his social security card and New York driver's license was found in the truck along with his cell phone and a receipt bearing Mr. Torres' name. A reasonable jury could accept this testimony and conclude that Mr. Torres became concerned that the officers would find the machinegun in his waistband and decided to throw it through the truck's open window onto the driver's seat before fleeing the scene. See United States v. Berríos-Bonilla, 822 F.3d 25, 29 (1st Cir. 2016). In this case, the government presented sufficient evidence from which the jury could find that Mr. Torres possessed the firearm.

Moving on to the second element of 18 U.S.C. § 922(o), the government presented evidence that Mr. Torres knew the firearm had the characteristics of a machinegun. The Glock recovered from the truck was fitted with a chip allowing it to fire automatically.

The government presented evidence that the alterations to the Glock were obvious and visible. Officer Serrano testified that he could tell by looking at the Glock that had been altered. The government's firearms expert testified that the chip was visible just from looking at the gun so the jury could have

inferred that Mr. Torres would have seen the chip because he handled the Glock to and from the waistband of his shorts. His decision to then run from police permitted the jury to infer his consciousness of guilt.

Moreover, the jury could view the Glock for themselves during trial and had the opportunity to decide whether the chip was visible and obvious to Mr. Torres. The Glock had an extended magazine to accommodate additional ammunition so the jury could have inferred that Mr. Torres knew the Glock could fire multiple bullets with one pull of the trigger. Taking the evidence of the Glock's appearance and capability to fire more than one bullet at a time in the light most favorable to the verdict, a jury could reasonably find beyond a reasonable doubt that Mr. Torres knew that the Glock he removed from the waistband of his shorts and threw into the truck's open driver's side window had the characteristics of a machinegun. Tanco-Baez, 942 F.3d at 26-27 (citing Nieves-Castaño, 480 F.3d at 601 and Staples, 511 U.S. at 615 n.11).

The court finds that the record evidence supported the verdict on the firearms count. After reviewing the evidence in the light most compatible with the verdict and resolving all credibility disputes in the verdict's favor, we find that a rational jury could conclude that Mr. Torres possessed the gun, handled it, and therefore must have known that the Glock was

altered to transform it into a machinegun that could fire more than one round at a time, making a verdict that Mr. Torres was guilty beyond a reasonable doubt reasonable. The district court did not err in denying his motions for acquittal.

B.    Admission of the Cell Phone Photographs

During the trial, the government introduced four photographs of firearms and firearm accessories.

When the defendant's objection to the district court's evidentiary ruling is properly preserved, as here, we normally review for abuse of discretion. United States v. Velazquez-Fontanez, 6 F.4th 205, 219 (1st Cir. 2021), cert. denied, 142 S.Ct. 500 (U.S. Nov. 15, 2021)(No. 21-5812). "A harmless evidentiary error does not require reversal." Id. (citing Kotteakos v. United States, 328 U.S. 750, 765 (1946)).

On appeal, Mr. Torres argues that the photographs should have been excluded under Rules 401 and 403 of the Federal Rules of Evidence because they were not relevant, and their probative value was "substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Mr. Torres objected to the admission of the pictures at an appropriate time as unfairly prejudicial. The government argued that the pictures were relevant evidence of Mr. Torres' knowledge of and familiarity with firearms and were admissible under Rule 401.

After carefully examining the record, we find that the district court did not abuse its discretion in admitting the photographs from Mr. Torres' cell phone. The photographs were relevant to Mr. Torres' knowledge of firearm characteristics and high-capacity capabilities. That he had these images on his phone and accessed them months before this incident could help the jury find that he was familiar with firearms generally and acquainted with "the external and readily observable" altered features of the Glock such that the jury could infer that Mr. Torres knew the Glock was altered to operate as a machinegun. United States v. Shaw, 670 F.3d 360, 364-65 (1st Cir. 2012).

Moreover, Mr. Torres himself testified, denying ownership of the Glock or any firearm. "All credibility disputes are to be resolved in the verdict's favor, and this court need not believe that no verdict other than a guilty verdict could sensibly be reached but must only satisfy itself that the guilty verdict finds support in a plausible rendition of the record." United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006) (internal quotations omitted); Shaw, 670 F.3d at 362. The jury heard Mr. Torres' denials in the face of the government's evidence to the contrary, weighed the witnesses' credibility, and rendered a verdict against him based on all the evidence. The jury's verdict is supported by the record.

Not only was there no abuse of discretion, but, critically, Mr. Torres was also not prejudiced by the district court's admission of the photographs. The district court balanced the probative value of the photographs against the potential for unfair prejudice and concluded that they were relevant and more probative than prejudicial. We defer to the district court's assessment. See United States v. Smith, 292 F.3d 90, 99 (1st Cir. 2002). The government presented ample, compelling evidence that Mr. Torres actually and constructively possessed the machinegun. The district court's restriction of the scope of the data analyst's testimony to identifying the photographs without rendering an opinion about their weight or meaning ensured that Mr. Torres was not unfairly prejudiced.

Because we find that the district court did not abuse its discretion in admitting the photographs and Mr. Torres was not prejudiced by any error in admitting them, his appeal on this ground is rejected.

III. Conclusion

For the reasons given above, Mr. Torres' conviction is AFFIRMED.