[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11900
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2012
JOHN LEY
CLERK

D. C. Docket No. 0:10-cr-60249-FAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EZRA MOSTOWICZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 14, 2012)

Before EDMONDSON, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Ezra Mostowicz appeals his convictions for possession with intent to distribute controlled substances, 21 U.S.C. § 841(a)(1), and for possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i), for which he was sentenced to 90 months' imprisonment. Mostowicz pleaded guilty pursuant to a written plea agreement in which he reserved the right to appeal the district court's denial of his motion to suppress evidence. No reversible error has been shown; we affirm.

During a face-to-face meeting, a confidential source ("CS") told Officer Patrick Keegan that Mostowicz often sold cocaine and ecstacy at a local bar. The CS described Mostowicz, Mostowicz's car, Mostowicz's usual parking spot, and the time of day that Mostowicz was generally at the bar. The CS also said that Mostowicz carried a gun either on his person or in the center console of his car.

After their initial meeting, Officer Keegan spoke with the CS a couple of times on the phone about Mostowicz's drug activities. During one of these calls, the CS told Officer Keegan that Mostowicz would arrive at the bar in about ten minutes. Officer Keegan and Detective Wadel Romero drove immediately to the bar and, moments later, saw Mostowicz's car arrive and park in its usual spot. As Mostowicz left the driver's seat, Detective Romero ordered Mostowicz to stop and handcuffed him. Meanwhile, Officer Keegan removed a female passenger from

the car; and the officers directed both Mostowicz and his passenger to sit on a nearby curb.

Detective Romero then had his K-9 partner, Cody, conduct a sniff of the outside of the car. As Cody approached the driver's side door -- which Mostowicz had left open -- she began showing behavioral signs that she detected the scent of illegal drugs. Cody jumped immediately into the driver's seat, sniffed the center console area, and alerted, indicating that she was as close as possible to the source of the odor. Officer Keegan searched the car and found a gun between the driver's seat and the center console and a bag of drugs hidden inside the center console. Officer Keegan read Mostowicz his Miranda[1] rights, and Mostowicz admitted that the gun and the drugs in the car belonged to him.

On appeal, Mostowicz challenges the district court's denial of his motion to suppress evidence. He argues (1) that the officers lacked reasonable suspicion to perform an investigatory detention; (2) that the investigatory detention amounted to an arrest that was not supported by probable cause; and (3) that the dog sniff of the inside of his car violated his Fourth Amendment rights.[2] In considering the

---

[1]Miranda v. Arizona, 86 S. Ct. 1602 (1966).

[2]Mostowicz also argues that the district court violated his due process rights when it adopted the magistrate judge's report and recommendation -- over Mostowicz's objections -- without conducting a second evidentiary hearing to resolve various credibility issues. This argument has been foreclosed by the United States Supreme Court's decision in United States v. Raddatz, 100

district court's denial of a motion to suppress, we review the district court's findings of fact for clear error and its application of the law to the facts de novo. United States v. Nunez, 455 F.3d 1223, 1225 (11th Cir. 2006). We also construe the facts in the light most favorable to the prevailing party. Id.

To justify an investigatory detention, "the government must show a reasonable, articulable suspicion that the person has committed or is about to commit a crime." United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006). When determining whether reasonable suspicion exists, we must consider the totality of the circumstances to ascertain whether the officer had a "particularized and objective basis" for suspecting criminal activity. United States v. Arvizu, 122 S. Ct. 744, 750 (2002). Reasonable suspicion may be based on information supplied to an officer by another person, if that information bears sufficient indicia of reliability. Adams v. Williams, 92 S. Ct. 1921, 1923-24 (1972).

Officer Keegan met face-to-face with the CS for almost an hour and -- based on the CS's demeanor -- believed the CS to be credible. Such a face-to-face tip "is presumed to be inherently more reliable than an anonymous telephone tip because the officers receiving the information have an opportunity to observe the

_____

S. Ct. 2406, 2413-15 (1980), which concluded that a district court does not violate the Due Process Clause when it makes a de novo determination on credibility issues without hearing live testimony.

4

demeanor and perceived credibility of the informant." See United States v. Heard, 367 F.3d 1275, 1279 (11th Cir. 2004).

We have also determined that an informant's tip is sufficiently reliable to create a reasonable suspicion of criminal activity when -- as in this case -- officers corroborate both "presently observable facts and the prediction of future conduct." See United States v. Lee, 68 F.3d 1267, 1272 (11th Cir. 1995). Officers corroborated "presently observable facts," including Mostowicz's physical description, the make and model of Mostowicz's car, and that Mostowicz's car was parked one evening in the location specified by the CS.

In addition, the CS predicted Mostowicz's future conduct, telling Officer Keegan precisely when Mostowicz would arrive at the bar on the night of the arrest. Given the totality of the circumstances, we conclude that the CS's tip provided Officers Keegan and Romero with reasonable suspicion to conduct an investigatory detention of Mostowicz's car.

Mostowicz next argues that, even if the officers had reasonable suspicion to detain him, the investigative detention amounted to an arrest requiring probable cause. In determining whether a detention rises to the level of an arrest, we consider these four factors: (1) "the law enforcement purposes served by the detention"; (2) "the diligence with which the police pursue the investigation"; (3)

"the scope and intrusiveness of the detention"; and (4) "the duration of the detention." United States v. Acosta, 363 F.3d 1141, 1146 (11th Cir. 2004).

In examining the first factor, "the most important consideration is whether the police detained the defendant to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference." Id. (quotations omitted). Here, the officers ordered Mostowicz and his passenger out of the car and initiated a dog sniff of Mostowicz's car within minutes of the stop. We have said that such a dog sniff "is the kind of brief, minimally intrusive investigation technique" that supports an investigative detention. United States v. Hardy, 855 F.2d 753, 759 (11th Cir. 1988). Thus, this factor weighs in favor of the legality of the detention. The second and fourth factors also weigh in favor of the detention's legality because nothing evidences -- and Mostowicz does not argue -- that the police delayed the investigation or that the duration of the detention was unreasonable.

Under the third factor, "officers may take reasonable steps to ensure their safety so long as they possess 'an articulable and objectively reasonable belief that the suspect is potentially dangerous.'" Acosta, 363 F.3d at 1146. Thus, "an investigatory stop does not necessarily ripen into an arrest because an officer draws his weapon, handcuffs a suspect, [or] orders a suspect to lie face down on

6

the ground." Id. at 1147 (citations omitted). Based on the CS's tip that Mostowicz carried a gun, for the officers to believe that Mostowicz was dangerous and that they needed to protect themselves was reasonable. Thus, we are not convinced that the officers' acts -- which included activating their emergency lights, wearing tactical uniforms, drawing their weapons, and handcuffing Mostowicz -- converted the detention into an arrest.

We next address Mostowicz's argument that Cody's entry into his car violated his Fourth Amendment rights because it constituted a search without probable cause.[3] The four circuit courts that have addressed this issue have each concluded that a trained dog's instinctive acts -- performed without police encouragement or facilitation -- do not violate the Fourth Amendment. See United States v. Pierce, 622 F.3d 209, 213-14 (3rd Cir. 2010) (concluding that no Fourth Amendment violation occurred when a dog jumped instinctively through an open car door "without facilitation by his handler"); United States v. Vazquez, 555 F.3d 923, 930 (10th Cir. 2009) (stating that "we have upheld the legality of [a dog] sniff during a lawful detention when, as here, (1) the dog's leap into the car was instinctual rather than orchestrated and (2) the officers did not ask the driver to

---

[3]Mostowicz does not challenge the dog sniff of the exterior of his car. See United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997) (concluding that a dog-sniff of the outside of a car does not constitute a "search" within the meaning of the Fourth Amendment).

open the point of entry . . . used by the dog"); United States v. Lyons, 486 F.3d 367, 373 (8th Cir. 2007) (seeing no Fourth Amendment violation when a dog stuck his head instinctively through a van's open window without being directed to do so by officers); United States v. Reed, 141 F.3d 644, 650 (6th Cir. 1998) (stating that "absent police misconduct, the instinctive acts of trained canines . . . do[] not violate the Fourth Amendment"); United States v. Stone, 866 F.2d 359, 363-64 (10th Cir. 1989) (seeing no Fourth Amendment violation when a dog jumped instinctively into defendant's open hatchback and when the officers did not ask defendant to open the hatchback for purposes of the dog sniff); cf. United States v. Winningham, 140 F.3d 1328, 1330-31 (10th Cir. 1998) (concluding that a dog sniff of the inside of a van was unlawful when the officers opened the van's door and unleashed the dog as it neared the open door).

Mostowicz contends that the officers facilitated Cody's search when they handcuffed him before he had an opportunity to close his door. But nothing evidences that the officers instructed Mostowicz to leave open his door. And, as we have discussed, the officers handcuffed Mostowicz based on their reasonable belief that he was armed and dangerous, not to facilitate the dog sniff. Because Cody jumped instinctively into the car without encouragement or facilitation from the officers, we see no Fourth Amendment violation.

8

AFFIRMED.