# United States Court of Appeals
## For the First Circuit

No. 14-2242

UNITED STATES OF AMERICA,

Appellee,

v.

DAVID P. GAW,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lynch, Stahl, and Barron,
Circuit Judges.

William J. Cintolo, with whom Cosgrove Eisenberg & Kiley was on brief, for appellant.
Evan Rose, Attorney, United States Department of Justice, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

March 9, 2016

**BARRON**, **Circuit Judge**. David Gaw, an employee with the Massachusetts Registry of Motor Vehicles ("RMV"), appeals from his conviction on two counts of mail fraud, 18 U.S.C. §§ 2, 1341, 1346, and one count of conspiracy to interfere with interstate commerce by threats or violence, id. § 1951 ("Hobbs Act"). The convictions relate to an alleged scheme to sell automotive service station owners RMV licenses to perform state-mandated vehicle inspections. Gaw contends that the evidence was insufficient to support the convictions, but we reject this challenge. And because we also reject Gaw's other arguments for overturning the convictions, we affirm them.

## I.

Gaw's convictions arise from allegations concerning his work as a field investigator with the RMV. In Massachusetts, automotive service station owners must obtain a license from the RMV in order to perform state-mandated vehicle inspections. See 540 C.M.R. § 4.08. In 2008, the RMV placed a cap on the number of licenses that the RMV would issue to service stations to perform inspections of regular passenger vehicles.

Because inspection licenses are generally not transferable, the cap matters a lot. Once the RMV hits the cap, a service station owner who seeks a license is seemingly out of luck. See id. § 4.08(1)(a)(2). The RMV, however, had an unwritten policy that allowed licenses to follow a station owner if the owner

- 1 -

merged the station into another that did not have a license. And this unwritten policy -- and the ambiguity about the rules, if any, that govern merger approvals -- figures prominently here for the following reason.

In 2009, the RMV had hit the cap. The government alleges that Gaw and two others -- Simon Abou Raad, a service station owner, and Mark LaFrance, an RMV employee in charge of the vehicle inspection program -- developed a scheme to enrich themselves by taking advantage of the interaction between the cap and the unwritten merger policy.

According to the government, the conspirators would identify service station owners who held licenses but were not doing a large inspection business. The conspirators would then either attempt to shut down those owners' service stations on technicalities or offer to buy their inspection equipment in the hope that the service station owners would agree to give up their licenses.

If station owners who were approached in connection with this scheme agreed to give up their licenses, the government contended, the conspirators would then find a "buyer" for the license and draw up sham paperwork to make it appear that the station owner giving up its license was merging into the "buyer." In this way, the participants in the scheme were able to profit

from the unlawful transfer of licenses by selling them while disguising them as transfers effected pursuant to mergers.

Due to his alleged involvement in the scheme, Gaw was indicted in the United States District Court for the District of Massachusetts on 16 counts of mail fraud and one count of violating the Hobbs Act. In addition to the Hobbs Act count, the government pursued three of the 16 mail fraud counts at trial: two relating to the sale of one license and one relating to the sale of another.

At the conclusion of the evidence, Gaw moved for acquittal on all counts. The District Court denied the motion and the case then went to the jury. The jury returned guilty verdicts on two of the mail fraud counts, a not guilty verdict on the third mail fraud count, and a guilty verdict on the Hobbs Act count.

Gaw then moved for acquittal pursuant to Federal Rule of Criminal Procedure 29. Gaw also moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. Both motions were denied. The District Court sentenced Gaw on each charge to one year and one day in prison, followed by a year of supervised release. The sentences were to run concurrently.

On appeal, Gaw challenges the sufficiency of the government's evidence as to each of his convictions, argues that the District Court should have ordered a new trial, and contends that the cumulative error doctrine also requires that his

convictions be vacated.  We address these arguments in turn, and we reject each one.

## II.

We start with Gaw's challenge to the District Court's denial of his Rule 29 motion.  Our review is de novo.  United States v. Hatch, 434 F.3d 1, 4 (1st Cir. 2006).

The question that we must resolve is whether "a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime."  Id. (internal quotation mark and citation omitted). "[T]his court need not believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in a plausible rendition of the record."  Id. (internal quotation marks and citation omitted). In undertaking that review, we consider "the evidence in the light most amiable to the government," make "all reasonable inferences in its favor," and resolve all credibility disputes in favor of the verdict.  Id. (internal quotation mark and citation omitted).

Our sufficiency review is made more complicated here by virtue of the number of distinct theories of criminal liability the government pursued at trial.  Thus, before we turn to what the record shows about the evidence, we briefly discuss the theories the government put into play.

As we have said, the government charged Gaw with violating the mail fraud statute and the Hobbs Act. And with regard to the mail fraud counts, the parties agree, the government charged Gaw both as a principal and as an aider and abettor.

At trial, the government argued that Gaw could be convicted of each count of mail fraud under one theory -- known as the "money or property" theory -- either as a principal, or as an aider and abettor of either Mark LaFrance or Simon Abou Raad. The government also argued that Gaw could be convicted of each count of mail fraud under a second theory -- known as the "honest services" theory -- as either a principal or as an aider and abettor of LaFrance. There were thus, effectively, five theories of liability in play for each count of mail fraud.

The government also argued that Gaw could have been convicted under either of two separate theories of Hobbs Act liability, known respectively as the "fear of economic loss" and "color of official right" theories. And, the government argued, Gaw could be convicted under either theory for conspiring with either Abou Raad or LaFrance. There were thus effectively four theories of liability in play as to that charge.

The District Court, understandably, raised some concern that the broad array of theories would be too confusing to the jury. But, ultimately, the District Court allowed the government to proceed with all of these theories in presenting its case.

Gaw does not challenge that decision on appeal. Nor does he argue that the case was not in fact so presented. As a result, we must affirm each count if the evidence is sufficient for the jury to have convicted Gaw under any one of the relevant theories of liability presented to the jury as to that count. See United States v. Gobbi, 471 F.3d 302, 309 (1st Cir. 2006) ("The law is crystalline that, when the government has advanced several alternate theories of guilt and the trial court has submitted the case to the jury on that basis, an ensuing conviction may stand as long as the evidence suffices to support any one of the submitted theories.").

As we shall explain, Gaw has failed to show that any of the counts must be reversed as to all of the theories that were presented to the jury for that count. In particular, he has not shown that his Hobbs Act conviction must be overturned for lack of sufficient evidence on the fear of economic loss theory. Nor has he shown that his mail fraud convictions must be overturned for lack of sufficient evidence on the theory that he aided and abetted LaFrance's honest services fraud. We thus affirm each of these convictions.

**A.**

We begin with Gaw's contention that there was insufficient evidence to convict him of conspiracy to commit

- 6 -

extortion in violation of the Hobbs Act.  We conclude that Gaw has failed to show on appeal that the evidence was insufficient to support this conviction.

The Hobbs Act makes it a crime to "in any way or degree obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempt[] or conspire[] so to do."  18 U.S.C. § 1951(a).  The Act further defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  Id. § 1951(b)(2).  And with respect to the wrongful use of fear, "we have clarified that 'fear' can mean the 'fear of economic loss.'"  United States v. Bucci, 839 F.2d 825, 827 (1st Cir. 1988) (quoting United States v. Hathaway, 534 F.2d 386, 394 (1st Cir. 1976)).

In this case, the special verdict form shows that the jury found Gaw guilty of the Hobbs Act violation under both the color of official right and fear of economic loss theories.  Gaw argues only that there was insufficient evidence to convict him of conspiracy to violate the Hobbs Act under a color of official right theory.  Therefore, we agree with the government that waiver provides a sufficient ground on which to uphold Gaw's Hobbs Act conviction.

"The 'color of official right' and 'fear' prongs provide alternative, independently sufficient grounds for finding extortion; thus, adequate proof of one obviates any need for proof of the other."  United States v. Cruz-Arroyo, 461 F.3d 69, 73 (1st Cir. 2006).  Because Gaw makes no argument that the evidence was insufficient to support his conviction of conspiracy to violate the Hobbs Act under a fear of economic loss theory, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), that conviction must be affirmed.  See Cruz-Arroyo, 461 F.3d at 73.[1]

---

[1] We note that, setting waiver aside, there was sufficient evidence for the jury to find Gaw guilty of conspiracy to commit Hobbs Act extortion under a color of official right theory.  That is because the same evidence that supports Gaw's conviction for aiding and abetting LaFrance's honest services fraud -- which we discuss at length below -- would support his conviction for conspiracy to commit Hobbs Act extortion under color of official right.  See United States v. McDonough, 727 F.3d 143, 155-56 (1st Cir. 2013) ("Here, for the same reasons that we found the evidence sufficient to support the honest-services fraud convictions, we hold that the jury was presented with enough evidence to support [defendant]'s extortion [under color of official right] conviction.").  From this record, the jury could rationally infer that Gaw "actively participate[d] in" LaFrance's commission of honest services mail fraud with "advance knowledge" of all of "the circumstances constituting the charged offense."  Rosemond v. United States, 134 S. Ct. 1240, 1248-49 (2014).  The jury could also rationally infer that there was a tacit agreement between Gaw and LaFrance to commit Hobbs Act extortion under color of official right.  See United States v. Muñoz-Franco, 487 F.3d 25, 45-46 (1st Cir. 2007) ("A formal agreement is not required; rather, the agreement may be shown by a concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose." (internal quotation marks, brackets, and citations omitted)); United States v. Martinez-Medina, 279 F.3d 105, 113-14 (1st Cir. 2002) ("The jury may infer an agreement circumstantially by evidence of, inter alia, a common purpose . . . overlap of participants, and interdependence of

We next turn to Gaw's sufficiency challenge to his two convictions for mail fraud.  These convictions -- and thus the evidence that the government contends supports them -- relate to a single transaction: the transfer of an inspection license from one station owner, Frank Pignatare, to another, Michael Youssef, for $75,000.

The government alleges that this transaction -- which we will refer to as the "Youssef transaction" -- was engineered by Gaw, Abou Raad, and LaFrance.  The two mail fraud counts against Gaw stem from the fact that there were two separate mailings made with respect to that transaction.  The indictment identifies those mailings as a "Forged Letter purportedly from 'F.P.'" mailed by Abou Raad to the RMV on December 24, 2012, and an "Application for Inspection Station Approval," which was mailed by the RMV to "'S.A.W.' Stoneham, MA" on January 7, 2013.  The parties do not differentiate between the two counts of mail fraud on appeal.

The indictment alleges that Gaw, Abou Raad, and LaFrance committed mail fraud "aided and abetted by each other."  Thus, Gaw's mail fraud convictions may be upheld if the evidence suffices

---

various elements in the overall plan."); United States v. Palmer, 203 F.3d 55, 64 (1st Cir. 2000) ("A conspiracy may be established through circumstantial evidence, and the government need only demonstrate a tacit understanding between the conspirators to prove its case.").

to show that he aided and abetted either Abou Raad's or LaFrance's mail fraud, even if the evidence is not sufficient to support a finding that Gaw was guilty of mail fraud as a principal.  United States v. García-Carrasquillo, 483 F.3d 124, 131 (1st Cir. 2007).

Finally, there are two types of mail fraud.  Mail fraud may deprive the victim of money or property, as is usually the case, United States v. Sawyer, 85 F.3d 713, 723 (1st Cir. 1996), or mail fraud may deprive the victim of "honest services," as may occur in some special cases, 18 U.S.C. § 1346; see also United States v. Urciuoli, 613 F.3d 11, 12 n.1 (1st Cir. 2010).  And the government presented each theory of mail fraud to the jury in pursuing its case against Gaw.

Gaw contends that the evidence cannot support his mail fraud convictions under either of these theories, as either a principal or as an aider and abettor.  We disagree.

In reaching this conclusion, we are aware that Gaw argues that he could not have committed money or property mail fraud as either a principal or as an aider and abettor.  He grounds this argument on his contentions that an RMV license cannot be considered "money or property" for the purposes of the statute, see Cleveland v. United States, 531 U.S. 12, 26 (2000), and that Youssef cannot be said to have been deprived of the money he paid to buy the license given that he was in on the scheme and thus got

- 10 -

exactly what he knew he was buying.[2]  But even if we were to conclude for those reasons that the evidence was insufficient to find Gaw guilty -- as either a principal or as an aider and abettor -- of money or property mail fraud, that would not necessitate overturning his mail fraud convictions.  We would be required to overturn them only if there were also insufficient evidence to support finding Gaw guilty, on these two counts, of honest services mail fraud.  Gaw, however, has failed to show that that is the case, as we will now explain.

## c.

In an honest services mail fraud prosecution, the government must prove that an official received something of value in exchange for being influenced in the performance of an "official act."   United States v. McDonough, 727 F.3d 143, 152 (1st Cir. 2013).  Gaw argues that he cannot be found guilty as a principal because he did not enter into an agreement to be influenced in the performance of official acts in exchange for receiving something of value and because the acts that he did perform fall outside the

---

[2]  The National Association of Criminal Defense Lawyers submitted an amicus brief that contends that the jury instructions on money or property fraud were erroneous because they would have allowed the jury to find Gaw guilty even without finding that he intended to deprive the victim of property.  See United States v. Sandler, 750 F.3d 585 (6th Cir. 2014).  Gaw does not adopt this argument regarding the jury instructions, and, in any event, because we decide the case on alternative grounds, we need not address it.

- 11 -

scope of honest services mail fraud, as those acts were "relatively straightforward task[s] that simply do[] not raise the specter of secretive, self-interested action, as does a discretionary, decision-making role." United States v. Czubinski, 106 F.3d 1069, 1076-77 (1st Cir. 1997).

As the government points out, however, the evidence was sufficient to convict Gaw as an aider and abettor of LaFrance's honest services mail fraud. And we thus affirm the convictions for mail fraud on that separate basis. To see why we reach this conclusion, it helps to start with a brief recap of the elements of the crime.

As we have explained before, "[t]he crime of mail fraud includes three elements: '(1) a scheme to defraud based on false pretenses; (2) the defendant's knowing and willing participation in the scheme with the intent to defraud; and (3) the use of interstate mail communications in furtherance of that scheme.'" United States v Soto, 799 F.3d 68, 92 (1st Cir. 2015) (quoting United States v. Hebshie, 549 F.3d 30, 35 (1st Cir. 2008) (alteration omitted)). Moreover, as we have also explained before, to prove that a defendant is liable as an aider and abettor, the government must prove "that: 1) the substantive offense was actually committed [by someone]; 2) the defendant assisted in the commission of that crime or caused it to be committed; and 3) the defendant intended to assist in the commission of that crime or to

- 12 -

cause it to be committed." United States v. Davis, 717 F.3d 28, 33 (1st Cir. 2013) (citing United States v. Rodríguez-Adorno, 695 F.3d 32, 42 (1st Cir. 2012)); see also Rosemond v. United States, 134 S. Ct. 1240, 1248-49 (2014) (the intent prong is satisfied when a defendant "actively participates in a criminal venture" and has "advance knowledge" of all of "the circumstances constituting the charged offense").

Gaw does not dispute a number of these elements with regard to aiding and abetting LaFrance's honest services mail fraud. He does not dispute that LaFrance helped engineer the Youssef transaction. Nor does Gaw dispute that LaFrance committed honest services mail fraud in doing so -- which is to say, Gaw does not dispute that LaFrance was paid in exchange for his role in undertaking official acts to effect a sham merger to facilitate the Youssef transaction. Nor, finally, does Gaw contend that he did not assist in, with the intent to further, the Youssef transaction that he concedes LaFrance committed honest services mail fraud in facilitating. In light of those concessions, Gaw's only contention that is potentially relevant to whether he aided and abetted LaFrance's honest services mail fraud is his general assertion that he lacked the requisite knowledge for him to be convicted. But that assertion does not help him here.

The evidence is sufficient for a rational jury to find "that [Gaw] consciously shared [LaFrance]'s knowledge of"

- 13 -

Lafrance's honest services fraud, "the underlying criminal act." United States v. Negrón-Sostre, 790 F.3d 295, 311 (1st Cir. 2015) (quoting United States v. Bristol–Mártir, 570 F.3d 29, 39 (1st Cir. 2009)); see also Rosemond, 134 S. Ct. at 1248-49 (to be convicted of aiding and abetting, a defendant must have "advance knowledge" of all of "the circumstances constituting the charged offense"). And that is because the record provides sufficient support for a rational jury to find that Gaw understood both that LaFrance was using his position in the RMV to further the Youssef transaction and that LaFrance was being paid to do so from the proceeds of the transaction. See McDonough, 727 F.3d at 152.

**D.**

As an initial matter, the record provides ample support -- in the form of testimony from others and recorded wiretaps -- for finding that Gaw participated intimately in furthering the entire Youssef transaction. Indeed, the record provides sufficient evidence for the jury to have found that it was Gaw who both identified Youssef as a potential buyer for the license and put Youssef in touch with Abou Raad. And, in fact, Gaw admits that he was paid $2,000 for his role.

Moreover, the evidence directly supports finding that Gaw was in fact aware that LaFrance was involved in approving the Youssef transaction. In particular, the government put into evidence a recording of a wiretapped phone call in which Abou Raad

- 14 -

told Gaw that he would try to get paperwork to LaFrance without Michael Devaney, Gaw's immediate supervisor, knowing about it. The government argues -- and the evidence suggests -- that the paperwork mentioned in that call was related to effecting the Youssef "merger," and Gaw does not contend otherwise.

Nor could Gaw argue that the record did not sufficiently support that conclusion, given a number of other recorded calls that the government introduced at trial. One of those calls was made the day after the call in which Gaw and Abou Raad spoke about Abou Raad getting the paperwork to LaFrance. On that call, Abou Raad talked to Youssef about making sure that Youssef had all of the necessary equipment to perform state-mandated vehicle inspections, for which he needed approval from LaFrance's department. On another of those calls, from about a week later, Abou Raad and Youssef discussed waiting to get "papers" from the RMV. And, finally, recorded phone calls introduced by the government support the conclusion that Gaw and Abou Raad had talked about Youssef's paperwork on three prior occasions within about two weeks leading up to the call in which Abou Raad and Gaw spoke about Abou Raad getting "paperwork" to LaFrance on the sly.

Gaw does contend that he did not know that the merger in the Youssef transaction was fraudulent. But even assuming that such knowledge would be necessary for Gaw to be convicted of aiding and abetting LaFrance's honest services mail fraud, the jury could

reasonably have concluded that Gaw did know that the merger was fraudulent. As we have noted, the government introduced evidence to show that Gaw knew Abou Raad was trying to get the Youssef paperwork to LaFrance without Devaney -- Gaw's supervisor -- knowing about it. In the same call that Abou Raad and Gaw discussed Abou Raad getting paperwork to LaFrance on the sly, moreover, Gaw told Abou Raad that he had been joking with LaFrance about "merger" being the "new word" in the RMV vocabulary. And, as the wiretaps showed, Gaw even told Youssef to hide Gaw's involvement in the transaction. This evidence suffices to support a finding by the jury that Gaw understood that the merger was fraudulent. See United States v. Nivica, 887 F.2d 1110, 1115 (1st Cir. 1989) ("His attempts to hide the truth, or cast it in a false light, were competent proof of guilty knowledge.").

Other record evidence rounds out the picture of Gaw's knowledge of LaFrance's role. The government introduced a recording of a call in which Gaw told Abou Raad that he spoke to LaFrance about the overall scheme (though with no mention of the Youssef transaction in particular), and that LaFrance had told Gaw that "as long as the guy that owned the business, his name is on the paperwork, they can do any fucking thing they want." And, further, the government introduced yet another recording of a call in which Gaw indicated that he knew of LaFrance's involvement in the Youssef transaction itself. In that call, Gaw told Abou Raad

that he should collect the money from Youssef because LaFrance had just called Gaw and told him to go by Youssef's station and that once he did, Youssef would be open for business.

Simply put, there was a great deal of evidence pertaining to both Gaw's intimate knowledge of the Youssef transaction as a whole and Gaw's knowledge of LaFrance's involvement in both that same transaction and the overall sham merger scheme. In light of that evidence, the record supports the reasonable inference that Gaw knew what Gaw does not dispute -- that LaFrance was using his position with the RMV to further the effort to effect a sham merger in connection with the Youssef transaction.

That leaves only the question whether the evidence also supports the conclusion that Gaw knew LaFrance was performing his role in the Youssef transaction in return for payment from the proceeds of the scheme. But the record shows that the jury could rationally infer from the evidence that Gaw possessed just such knowledge.

The record provides overwhelming support for the conclusion that Gaw understood that he would himself be paid by Abou Raad for assisting with the Youssef transaction. In addition to the evidence from recorded calls that showed Gaw expected that he would be paid by Abou Raad for that transaction, the government also introduced a recording of a wiretapped call that took place

- 17 -

after the Youssef sale was completed in which Gaw and Abou Raad discussed making money via similar sham mergers going forward.

Specifically, Abou Raad stated in that call, "We can make, we can make lot [sic] of money if we . . . have the buyer. We don't want the buyers, we want the sellers. That's where we can make fucking five thousand apiece. You know what I mean?" Gaw then responded, "[y]ep," at which point Abou Raad continued, "So we need the sellers, not buyers we, we don't make much. We need the sellers. That's where we can control the shit."

In light of this evidence, it would hardly be an unreasonable leap for the jury to conclude that Gaw knew that LaFrance was being similarly paid for his role in the Youssef transaction as well. The evidence provided support for a rational jury finding that Gaw was intimately involved in an effort to facilitate a sham merger so that he could be paid. The evidence also showed that those with whom he spoke in carrying out the Youssef transaction were performing their role in order to be paid from the proceeds of the sale. Furthermore, the evidence supports the inference that Gaw knew that LaFrance was in on the same transaction and was providing the necessary approval of the paperwork. It thus would be quite reasonable for a jury to conclude that Gaw knew that LaFrance, too, was performing his role in the Youssef transaction in exchange for money from the proceeds of the sale -- as, Gaw concedes, LaFrance actually was. See United

States v. Ortiz, 966 F.2d 707, 712 (1st Cir. 1992) (explaining that "jurors are neither required to divorce themselves from their common sense nor to abandon the dictates of mature experience" and that "factfinders may draw reasonable inferences from the evidence based on shared perceptions and understandings of the habits, practices, and inclinations of human beings").

**E.**

As we have already pointed out, Gaw challenges only one element of aiding and abetting liability. He does not argue that LaFrance did not in fact commit honest services mail fraud. Nor does he argue that he did not assist in its commission. Nor does he argue that he did not intend to help LaFrance. The only contention Gaw arguably does make is that he lacked the requisite knowledge of the crime that he assisted LaFrance in committing. But, as we have shown, the evidence supports the reasonable finding that Gaw did know that LaFrance was taking money in exchange for performing official acts to effectuate a fraudulent merger in furtherance of the Youssef transaction. See McDonough, 727 F.3d at 152. Therefore, the evidence is sufficient for a rational jury to find "that [Gaw] consciously shared [LaFrance]'s knowledge of the underlying criminal act." Negrón-Sostre, 790 F.3d at 311.

To be sure, much of the evidence concerning Gaw's knowledge of LaFrance's commission of honest services fraud is circumstantial, rather than direct. But "[t]he law is long since

settled that the prosecution may prove its case without direct evidence of a defendant's guilty knowledge so long as the array of circumstantial evidence possesses sufficient persuasive power." United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994).

Therefore, "taking the evidence and reasonable inferences in the light most helpful to the prosecution," United States v. Munyenyezi, 781 F.3d 532, 536 (1st Cir. 2015), we conclude that the evidence is sufficient for a rational jury to have found beyond a reasonable doubt that Gaw aided and abetted LaFrance's honest services fraud. Accordingly, Gaw's mail fraud convictions must be affirmed.

## III.

We next address Gaw's assertion that the District Court erred in denying his motion for a new trial under Federal Rule of Criminal Procedure 33. Gaw first contends that the motion should have been granted because at trial the District Court improperly excluded certain evidence that Gaw intended to use to support a good faith defense. Gaw next argues that the District Court should have granted him a new trial because the evidence weighed so heavily against the verdict.

We "review the [D]istrict [C]ourt's denial of a Rule 33 motion for 'manifest abuse of discretion.'" United States v. Flores-Rivera, 787 F.3d 1, 15 (1st Cir. 2015) (citing United States v. González–González, 258 F.3d 16, 20 (1st Cir. 2001)). We

identify no such abuse, and we thus reject each of Gaw's contentions.

**A.**

Gaw argues that the District Court erred in refusing to allow him to introduce into evidence "the RMV's Code of Conduct, regulations and other state law evidence." He contends that this evidence would have supported the conclusion that he believed paid referrals of buyers and sellers of licenses were lawful and thus would have supported his contention that he lacked the requisite intent to have committed the crimes.

We review such evidentiary decisions by district courts only for abuse of discretion, United States v. Peake, 804 F.3d 81, 96 (1st Cir. 2015), and we see none here. Gaw contends that "if [he] believed that he could make paid referrals to Abou Raad, he could not simultaneously possess the required willful intent to violate the statutes under which he was charged." But even assuming that that is the case, Gaw must still show how the code of conduct that he contends was improperly excluded was relevant to whether he possessed the requisite criminal intent.

His brief, however, does not cite to the actual document, explain what it is, or argue that Gaw even knew about it at the relevant time, let alone that he actually relied on it in taking

- 21 -

the steps to facilitate the Youssef transaction that he took.[3]

Cf. Urciuoli, 613 F.3d at 15 ("Urciuoli claims that the class exception was still relevant to his defense that he (Urciuoli) acted in good faith because he knew of the class exception . . . ." (emphasis added)).[4]  Given that the District Court ruled that Gaw could admit evidence of state law or RMV codes of conduct so long as he could show that he had known of them, we cannot see how the District Court abused its discretion in making the evidentiary

---

[3] His brief quotes at length from Section 7.01 of the "code of conduct" that he contends should have been admitted into evidence: "The Commonwealth seeks to give employees the maximum freedom possible to engage in outside employment or business activities consistent with their responsibilities to the Commonwealth. However, the extremely sensitive mission of the Commonwealth and its employees necessitates certain restrictions. Employees may engage in outside employment or business activity provided such activity is not prohibited by this Code or by any statute, regulation or departmental order. If employees plan to engage in outside employment or business activity, they must give prior written notice to their appointing authority of the planned employment or activity."  It also quotes Section 7.02:  "Employees are generally not required to submit written notice before engaging in outside activities which are not considered to be employment or business."

[4] Gaw also contends that the District Court erred by not "provid[ing]" the jury with what he terms a "state law explication."  But Gaw did not object to the jury instructions that the District Court gave, and he makes no developed argument on appeal as to how the demanding plain error standard that thus applies could possibly be met.  See United States v. Colon, 744 F.3d 752, 757 (1st Cir. 2014).  In fact, his briefs do not make clear what instructions should have been given to the jury that was not.  We thus reject the argument as waived.  See Zannino, 895 F.2d at 17.

- 22 -

ruling that it did. Accordingly, we reject Gaw's evidentiary challenge to the denial of his new trial motion.

**B.**

Gaw also contends that the District Court erred in not granting him a new trial for an additional reason. He contends that the District Court "did not weigh the preponderance and exercise its discretion in denying the motion for a new trial." But the record shows otherwise.

In rejecting the new trial motion, the District Court wrote: "After careful consideration of the arguments in light of the trial evidence, I conclude that the jury was correctly instructed as to the law and its verdict was adequately supported by evidence introduced at trial." Moreover, we will overturn the denial of a motion for a new trial "predicated on the district court's evaluation of the weight of the evidence," only if it is "quite clear that the jury has reached a seriously erroneous result." United States v. Rivera Rangel, 396 F.3d 476, 486 (1st Cir. 2005) (internal quotation mark and citation omitted). That is simply not the case here.

Our review of the evidence supporting Gaw's mail fraud convictions shows that the jury did not reach a seriously erroneous result. See id. And Gaw develops no argument as to why it was seriously erroneous for the jury to convict him of a Hobbs Act violation under a fear of economic loss theory of liability. Thus,

- 23 -

as with his sufficiency challenge, Gaw has waived any argument that he was entitled to a new trial on his Hobbs Act conviction.

## IV.

As should be clear by now, Gaw's final contention -- that his convictions must be vacated pursuant to the doctrine of cumulative error -- cannot succeed. For while "[i]ndividual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect," United States v. Sepulveda, 15 F.3d 1161, 1195-96 (1st Cir. 1993), "cumulative-error analysis is inappropriate when a party complains of the cumulative effect of non-errors." United States v. Stokes, 124 F.3d 39, 43 (1st Cir. 1997). And, for the reasons already given, that is the situation here. See United States v. Laureano-Pérez, 797 F.3d 45, 79 (1st Cir. 2015).

## V.

For the foregoing reasons, Gaw's convictions are **affirmed**.