**Affirmed and Opinion filed August 27, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00606-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**COURTNEY JAMES-VARNELL ORGAN, Appellee**

**On Appeal from the 155th District Court**
**Waller County, Texas**
**Trial Court Cause No. 21-01-17544**

## O P I N I O N

Appellee Courtney James-Varnell Organ filed a motion to suppress evidence, arguing that a narcotics dog's sniff of his car's interior violated his Fourth Amendment rights against unreasonable searches. The trial court granted Appellee's motion and the State appealed. For the reasons below, we affirm the trial court's order.

BACKGROUND

Testifying at the hearing on Appellee's motion to suppress evidence, Trooper Cornell said he was patrolling the traffic on Highway 290 in Waller County when he observed a vehicle traveling above the posted speed limit. Trooper Cornell initiated a traffic stop and the vehicle pulled over to the side of the highway. Trooper Cornell approached the vehicle's passenger-side window.

Trooper Cornell recalled seeing Appellee sitting in the car's driver's seat and, as he walked up to the car, Appellee "had started lighting a cigarillo or a Swisher Sweet" and "was puffing away fairly quickly." According to Trooper Cornell, "[s]ometimes we notice this as either a masking smell or sometimes just nervousness." Trooper Cornell also recalled that the vehicle's passenger appeared nervous.

Trooper Cornell said the vehicle was "fairly clean" but noted "multiple packages of what I could smell, that smelled like either seafood or Chinese food." Trooper Cornell testified that the food had "that smell that most food has when it starts to deteriorate." Trooper Cornell opined that the food and the cigarillo "masked other things that might have been" in the car.

Trooper Cornell requested backup police units to the scene and Deputy Kern arrived with his narcotics dog, Jaks. Describing Jaks' narcotics training, Deputy Kern said Jaks was "imprinted" with five odors: marijuana, MDMA, cocaine, methamphetamine, and heroin. Deputy Kern said Jaks was trained to "alert" when he smelled one of the substances and would do so by altering his body language, breathing, and tail wagging.

After arriving at the scene, Deputy Kern deployed Jaks for an open-air sniff test of Appellee's car's exterior. Admitted into evidence was Deputy Kern's body

camera footage from this test. The footage shows Jaks begin his open-air sniff on the exterior of the vehicle's driver side and proceed around the trunk, jumping on the vehicle at various points. As Jaks walks around the vehicle's passenger side, he stands on his hind legs and places his paws on the passenger door and puts his nose in the open passenger window. Jaks then twice walks to the front of the car and walks back towards the open passenger window, again placing his front paws on the door's exterior and placing his nose through the window into the vehicle's interior. Jaks proceeds to sit by the car's passenger door which, according to Deputy Kern, meant he detected one of the five odors he had been imprinted with in narcotics training.

A subsequent search of the car produced several bags of Xanax. Appellee was charged with possession of a controlled substance, namely, an amount of 400 grams or more of Etizolam. *See* Tex. Health & Safety Code Ann. §§ 481.104(a)(2), 481.117(e).

Appellee filed three motions to suppress evidence, all of which asserted the evidence seized by the police from Appellee's vehicle was the product of a warrantless search in violation of Appellee's Fourth Amendment rights. Appellee's first motion asserted the stop was prolonged without probable cause; Appellee's second and third motions asserted that Jaks was not a "well-trained dog" because he could not distinguish between marijuana and hemp. The trial court held a hearing on Appellee's motions and, at the conclusion of the hearing, orally denied them.

Appellee filed a motion to reconsider the denial of his motion to suppress, arguing that the seized evidence should be suppressed because Jaks' "nose illegally trespassed into [Appellee's] vehicle." The trial court granted the motion to reconsider in an order signed August 10, 2023, holding that "the dog Jaks did

3

illegally intrude into [Appellee's] vehicle" and granting Appellee's motion to suppress. The trial court also signed findings of facts and conclusions of law that state, in relevant part:

16. It is uncontroverted that Jaks and Deputy Kern conducted an open air walk around [Appellee's] vehicle.

17. There is credible testimony establishing proof beyond a reasonable doubt that the nose of Jaks entered or intruded into the interior of [Appellee's] vehicle through the open passenger window.

18. There is sufficient credible testimony establishing proof beyond a reasonable doubt that prior to Jaks' nose intruding into the interior of [Appellee's] vehicle, the dog had not alerted to the presence of contraband.

19. There is sufficient credible testimony establishing beyond a reasonable doubt that immediately after Jaks' nose intruded into the interior of [Appellee's] vehicle, the dog alerted.

*         *         *

## CONCLUSIONS OF LAW

1. [Appellee], sitting in his motor vehicle, had a reasonable expectation of privacy against a trespass by law enforcement.

2. The nose of Jaks entering [Appellee's] vehicle was a trespass.

3. The trespass was for the purpose of obtaining information on contraband.

4. Prior to the trespass, Trooper Cornell did not have probable cause to conduct a search of [Appellee's] vehicle.

5. When a police officer is not permitted to do an act, a dog acting on the officer's behalf is not permitted to do the act in lieu of the officer.

6. The search without a warrant of [Appellee's] vehicle was illegal.

7. The evidence of the illegal search, to-wit; etizolam, should be suppressed.

4

The State timely filed this appeal. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5).

**ANALYSIS**

On appeal, the State asserts that the trial court erroneously granted Appellee's motion to reconsider the denial of his motion to suppress evidence. We disagree and conclude that Jaks' interior sniff of Appellee's car constituted an unreasonable search in violation of Appellee's Fourth Amendment rights.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *See Lerma v. State*, 543 S.W.3d 184, 189-90 (Tex. Crim. App. 2018). We analyze the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to historical facts *de novo*. *Id*. Our deferential review of the trial court's factual determinations also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012); *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We will sustain the trial court's ruling if it is reasonably supported by the record and correct under any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (en banc).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "It is beyond dispute that a vehicle is an 'effect' as that term is used in the Amendment." *United States v. Jones*, 565 U.S. 400, 404 (2012) (quoting *United States v. Chadwick*, 433 U.S. 1, 12 (1977)).

In *Illinois v. Caballes*, the United States Supreme Court held that a dog's

5

open-air sniff of a vehicle's exterior is not a "search" for purposes of the Fourth Amendment. 543 U.S. 405, 408-09 (2005). In reaching this holding, the Court reasoned that government action constitutes a search only if it compromises a "legitimate" interest in privacy, and that "governmental conduct that *only* reveals the possession of contraband" does not qualify "because the expectation that certain facts will not come to the attention of the authorities is not the same as an interest in privacy that society is prepared to consider reasonable." *Id.* (emphasis in original). Given that the dog's sniff in *Caballes* "was performed on the exterior of respondent's car while he was lawfully seized for a traffic violation," the Court concluded that "[a]ny intrusion of [the defendant's] privacy expectations d[id] not rise to the level of a constitutionally cognizable infringement." *Id.* at 409.

But the facts here are different from those in *Caballes*. Whereas the dog in *Caballes* confined its search to the car's exterior, here the trial court found that Jaks' nose entered or intruded into the interior of Appellee's vehicle through the open passenger-side window before Jaks alerted to the presence of an imprinted scent. The State challenges this finding on lack of evidence grounds, but we are to defer to the trial court's express fact findings when they are supported in the record. *See State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017). We conclude that the challenged finding is supported by the video and testimonial evidence admitted during the suppression hearing.

The question then remaining is whether Jaks' interior sniff of Appellee's car constituted an unreasonable search in violation of the Fourth Amendment. Neither this court nor the Texas Court of Criminal Appeals has considered this issue. However, the question has been examined by six federal appellate courts, all of which concluded that a dog's entry into a vehicle during an exterior open-air sniff did not implicate the Fourth Amendment. *See United States v. Guidry*, 817 F.3d

6

997, 1005-06 (7th Cir. 2016); *United States v. Moore*, 795 F.3d 1224, 1231-33 (10th Cir. 2015); *United States v. Sharp*, 689 F.3d 616, 618-20 (6th Cir. 2012); *United States v. Mostowicz*, 471 F. App'x 887, 890-91 (11th Cir. 2012) (per curiam); *United States v. Pierce*, 622 F.3d 209, 213-15 (3rd Cir. 2010); *United States v. Lyons*, 486 F.3d 367, 373-74 (8th Cir. 2007). In reaching this conclusion, the courts' analyses relied at least in part on the "instinctual entry" theory, which posits that a dog's instinctive jump into a car does not violate the Fourth Amendment as long as the dog enters the vehicle on its own initiative and is neither encouraged nor placed in the vehicle by law enforcement officers and was not trained to do so. *See, e.g.*, *Guidry*, 817 F.3d at 1006; *Moore*, 795 F.3d at 1232; *Sharp*, 689 F.3d at 619-20; *Mostowicz*, 471 F. App'x at 890-91; *Pierce*, 622 F.3d at 213-14; *Lyons*, 486 F.3d at 373.

These cases, however, were decided before or did not discuss two United States Supreme Court cases examining Fourth Amendment protections in the context of the physical-intrusion theory. *See Florida v. Jardines*, 569 U.S. 1, 5-11 (2013); *United States v. Jones*, 565 U.S. 400, 404-13 (2012).[1]

In *Jones*, the Supreme Court examined the installation of a GPS tracking device on a suspect's vehicle to track his movements. 565 U.S. at 402-03. Employing a common-law physical trespass rationale, the Court held that the government's installation of a GPS device and its use of the device to monitor the suspect's movements constituted a "search" as that term is used in the Fourth

---

[1] More recent federal district court cases that analyze analogous situations in the context of *Jardines* and *Jones* conclude that a drug dog's sniff of a car's interior constitutes an unreasonable search in violation of the Fourth Amendment. *See, e.g., United States v. Handley*, No. 23-CR-57-CJW-MAR, 2024 WL 1536750, at *6-7 (N.D. Iowa Apr. 9, 2024); *United States v. Buescher*, 691 F. Supp. 3d 924, 928-39 (N.D. Iowa 2023); *United States v. Otero*, Nos. 22-10068-JWB-01 & 22-10068-JWB-02, 2023 WL 5336714, at *8 (D. Kan. Aug. 18, 2023) (dog's snout intruded into vehicle's open window by a few inches); *see also State v. Randall*, 496 P.3d 844, 851-56 (Idaho 2021).

Amendment.  *Id*. at 404.  The Court explained:

> It is important to be clear about what occurred in this case:  The
> Government physically occupied private property for the purpose of
> obtaining information.  We have no doubt that such a physical
> intrusion would have been considered a "search" within the meaning
> of the Fourth Amendment when it was adopted.

*Id*. at 404-05.

The Court also noted that its property-rights approach marked a return to the Fourth Amendment's original roots.  *See id*. at 405 ("our Fourth Amendment jurisprudence was tied to common-law trespass, at least until the latter half of the 20th century").  More recent cases, the Court explained, considered whether a search violated a person's "reasonable expectation of privacy" as the litmus test for a Fourth Amendment violation.  *See id*. at 405-06 (citing *Katz v. United States*, 389 U.S. 347, 351 (1967)).  But these lines of reasoning are not exclusionary; rather, they offer two routes to determine whether a Fourth Amendment violation has occurred.  *See id*. at 407-08; *see also, e.g.*, *Rodriguez*, 521 S.W.3d at 9 ("A Fourth Amendment claim may be based on a trespass theory of search (one's own personal effects have been trespassed), or a privacy theory of search (one's own expectation of privacy was breached).").

In *Jardines*, the Court considered whether officers' use of a drug-sniffing dog on the porch of a single-family residence to investigate the home's contents constituted a Fourth Amendment search.  569 U.S. at 4-5.  Again relying on a physical-intrusion analysis, the Court stated that:

> [w]hen the Government obtains information by physically intruding
> on persons, houses, papers, or effects, a search within the original
> meaning of the Fourth Amendment has undoubtedly occurred.

*Id*. at 5.  This principle, the Court noted, "renders this case a straightforward one."

*Id*. Because the officers "were gathering information in an area belonging to [the defendant] and immediately surrounding his house — in the curtilage of the house" by "physically entering and occupying the area" without the defendant's consent, the officers' behavior constituted a search within the meaning of the Fourth Amendment. *Id*. at 5-6.

The Texas Court of Criminal Appeals applied the physical-intrusion theory discussed in *Jones* and *Jardines*. *See State v. Rendon*, 477 S.W.3d 805, 808-10 (Tex. Crim. App. 2015). Relying on a "traditional property-based understanding of the Fourth Amendment," the Court of Criminal Appeals concluded that the officers' conduct "in bringing a trained drug-detection dog up to the threshold or area immediately outside of appellee's front door for the purpose of conducting a canine-narcotics sniff" was an unlicensed physical intrusion in violation of the Fourth Amendment. *Id*. at 808-10.

Applying these physical-intrusion principles here "renders this case a straightforward one." *See Jardines*, 569 U.S. at 5. Guided by this precedent, we conclude that Jaks' interior sniff of Appellee's car violated Appellee's Fourth Amendment rights protecting against an unreasonable search. *See* U.S. Const. amend. IV; *Jardines*, 569 U.S. at 4-6; *Jones*, 565 U.S. at 404-05.

Jaks, as a narcotics-detecting dog, is an instrumentality of law enforcement. *See Jardines*, 569 U.S. at 12 (Kagan, J., concurring) ("drug-detection dogs are highly trained tools of law enforcement"). Therefore, by sticking his nose inside Appellee's car while performing an open-air sniff, Jaks "physically occupied private property for the purpose of obtaining information." *Jones*, 565 U.S. at 404-05. This constitutes an unreasonable search in violation of the Fourth Amendment. *See* U.S. Const. amend. IV; *Jardines*, 569 U.S. at 4-6; *Jones*, 565 U.S. at 404-05.

We overrule the State's arguments on appeal and affirm the trial court's

order granting Appellee's motion to reconsider the denial of his motion to suppress.

## CONCLUSION

We affirm the trial court's August 10, 2023 order granting Appellee's motion to reconsider the denial of his motion to suppress.


/s/     Meagan Hassan
Justice


Panel consists of Justices Jewell, Zimmerer, and Hassan.

Publish — Tex. R. App. P. 47.2(b).